# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### (SOUTHERN DIVISION)

| | |
|---|---|
| _____ )<br>**SEAN MULLEN Individually and on** )<br>**behalf of all others similarly situated** )<br> )<br>**Plaintiff,** )<br> )<br>**v.** )<br> )<br>**PARK WEST GALLERIES, INC., d/b/a** )<br>**PARK WEST GALLERY, PWG** )<br>**FLORIDA, INC., FINE ART SALES,** )<br>**INC., VISTA FINE ART, LLC d/b/a PARK** )<br>**WEST AT SEA, ALBERT SCAGLIONE,** )<br>**ROYAL CARIBBEAN CRUISES LTD.,** )<br>**HOLLAND AMERICA LINE N.V.,** )<br>**CARNIVAL CORPORATION,** )<br>**CARNIVAL plc, CARNIVAL CRUISE** )<br>**LINE, and JOHN DOES 1-100.** )<br> )<br>**Defendants.** )<br>_____ ) | CIV. NO. _____ |

## CLASS ACTION COMPLAINT

Plaintiff, Sean Mullen ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), file this class action against Defendants: Park West Galleries, Inc. d/b/a Park West Gallery, PWG Florida, Inc., Fine Art Sales, Inc., Vista Fine Art, LLC d/b/a Park West at Sea (together "Park West"); Albert Scaglione ("Scaglione"); Holland America N.V. ("Holland America"); Royal Caribbean Cruises, Ltd. ("Royal Caribbean"); Carnival Corporation, Carnival plc ("Carnival") and John Does 1-100 (together "Defendants"). Plaintiff's allegations are based upon personal knowledge when pertaining to himself and upon information and belief, based on the investigation and research of counsel and publicly available materials, as to all other facts alleged in the Complaint.

## NATURE OF THE ACTION

1.      This is an action for damages brought by Plaintiff on behalf of a nationwide class of purchasers of artwork at shipboard art auctions conducted by Park West during leisure cruises on ships of the world's most famous Cruise Lines.[1]   Art auctions at sea are regular featured recreational events on cruises departing from the United States, offered to passengers (or "cruisers" as they are sometimes called) as an exciting and fun activity.

2.      Because of the illegal actions of Defendants, the art auctions described in this Complaint were anything but fun, and Plaintiff and the Class lost millions of dollars as a result of purchasing works of "art" on the Cruise Lines.

3.      For at least the past ten (10) years and continuing to the present, Park West planned, operated and continues to operate a fraudulent scheme to sell artwork at shipboard auctions on the Cruise Lines, representing at the auctions that the artwork is a "good investment" and will, immediately upon disembarking, appraise for "many times" the purchase price.  In fact, the artwork sold at the shipboard auctions is low-value or worthless, often mechanical reproductions or otherwise misrepresented in kind or quality by Park West and sold at inflated prices.  The "art" purchased by Plaintiff and the Class was *not* as it was represented to be by Park West.

4.      Park West and Scaglione were assisted and facilitated in the scheme alleged in this Complaint by Royal Caribbean (defined below) and Holland America (defined below), in their scheme to sell artwork on board ship, misrepresented to be a "good investment" and sell

---

[1]      "Cruise Lines" as used hereafter in this Complaint shall mean cruise ships owned or operated by Regent Seven Seas, **Royal Caribbean Cruises Ltd.**, Celebrity, Carnival, Norwegian Cruise Line, Oceania, Disney Cruise Line and **Holland America Line. N.V**.

phony Appraisals to support the value of the artwork.  Defendants earned millions in profit from the scheme.  Park West, Royal Caribbean, Holland America and Scaglione conspired to operate the fraudulent scheme through the Art Auction Enterprises (defined below).  Royal Caribbean and Holland America each voluntarily and knowingly joined and conspired with Park West and Scaglione to place the Park West art auctions as a recreational activity on their cruises, to conduct the auctions only while the ship was in international waters and to facilitate the Art Auction Enterprises.

5.     Defendants' scheme as alleged in this Complaint violates the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq*. and the state common and statutory laws entitling Plaintiff and the Class to damages.

## THE PARTIES

**Plaintiff:**

6.     Plaintiff, Sean Mullen ("Mullen") resides in Washington, D.C.  Mullen purchased artwork from Park West at shipboard auctions on a Royal Caribbean cruise in 2003 and a Holland America cruise in 2005.

**Defendants:**

### A.     Park West Defendants

7.     Defendant Park West Galleries, Inc. d/b/a Park West Gallery ("PWG") is a corporation organized under the laws of Michigan with its principal place of business and headquarters at 29469 Northwestern, Southfield, Michigan 49034.  PWG designed, operated and conspired with Scaglione, Royal Caribbean and Holland America to operate the fraudulent scheme described in this Complaint.

8.     PWG, on its Park West Gallery website, bills itself as the largest single operator of art auctions in the United States. PWG sells approximately 300,000 pieces annually with $300 million in annual sales. One-half of PWG's auction sales occur at shipboard auctions conducted during leisure cruises on the Cruise Lines departing from the United States, including Royal Caribbean and Holland America. PWG has an exclusive contract to conduct art auctions on Royal Caribbean and Holland America cruises.

a.     PWG has approximately 180 employees in Southfield, Michigan and operates its exhibition galleries, executive offices, staff functions, art storage facilities, research, framing department and customer service departments from that location.

b.     Upon information and belief, PWG maintains its business records in Southfield, Michigan. These business records include an "End of Cruise Report" created and maintained by Park West for each cruise on which an auction was conducted detailing: the ship's itinerary, date and shipboard venue of the auction, start and stop time of the auction, attendance, revenue from sales, including buyer's premium, appraisals sold and customer's method of payment, including payment on the ship's bill.[2]

c.     PWG has sold artwork, either itself or through affiliates it owns and controls, at shipboard auctions on the Cruise Lines for at least the past ten (10) years. Park West pays Royal Caribbean and Holland America a fee for renting the venues used to display the artwork and to hold the auctions on board the ship. It also pays Royal Caribbean and Holland

---

[2]     The ship's bill will include any items purchased by the cruiser that were not included in the price of the ticket.

America all fees associated with conducting the auctions, a fixed fee as a concessionaire and a percentage of the auction sales revenue for each voyage.

        d.    PWG prepares and distributes the phony Appraisals that are sold to successful bidders like Plaintiff and the Class at the shipboard auctions.  These Appraisals are paid for separately from the price of the artwork and, like the artwork, can be paid for by a purchaser by adding the price of the artwork or Appraisal to the ship's bill or separately by credit card.

        e.    PWG is not a publicly held corporation.  Complete information about the corporate structure of PWG, including the nature of its affiliations with other Park West related or non-related entities, is not available to Plaintiff and is under the exclusive control of Scaglione and Park West.

        f.    PWG controls Defendants PWG Florida, Inc., Fine Art Sales, Inc., Vista Fine Art LLC and John Does 1-50.

        g.    PWG designed and operated the Art Auction Enterprise and conspired with Royal Caribbean, Holland America and Scaglione to operate the Art Auction Enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), as described in this Complaint.

    9.    <u>Defendant PWG Florida, Inc.</u> ('PWG FL"), an affiliate of PWG, is incorporated in Delaware with its principal place of business in Miami Lakes, Florida.  PWG FL is controlled by Scaglione and PWG and participated with PWG in the operation of the fraudulent scheme and conspiracy alleged in this Complaint.

   a.  PWG FL has approximately 207 employees in Florida. PWG FL distributes art work sold at the Park West shipboard auctions from its Florida location. PWG employees travel frequently to PWG FL to conduct Park West's business.

   b.  PWG FL is not a publicly held corporation. Information about PWG FL, its corporate structure and affiliations with related Park-West entities, the John Does and Royal Caribbean and Holland America under the exclusive control of Scaglione, PWG or PWG FL.

   c.  PWG FL is controlled by PWG and Scaglione.

   d.  PWG FL participated with PWG and Scaglione in the fraudulent scheme described in this Complaint and conspired with PWG, Scaglione, Royal Caribbean and Holland America to violate RICO, 18 U.S.C. § 1962(c).

   10.  <u>Defendant Vista Art, LLC</u> ("Vista") is a Delaware limited liability company with its principal place of business located in Southfield, Michigan.

   a.  Vista, doing business as Park West at Sea ("PWS"), is an affiliate of PWG.

   b.  PWS sells art work at shipboard auctions on ships of the Cruise Lines *always* while the ships are in international waters and has done so for the past ten (10) years.

   c.  Vista participated in the operation of the fraudulent scheme and conspiracy described in this Complaint. Vista conspired with Park West, Scaglione, Royal Caribbean and Holland America to violate RICO, 18 U.S.C. § 1962(c).

   d.  PWS is controlled by Scaglione and PWG. Scaglione is PWS' sole member. Vista/PWS is not a public company. Information about the corporate structure of PWS

and its affiliations with other Park West and non-Park West persons or entities is not publicly available and is under the exclusive control of PWG, PWS and Scaglione.

11.    <u>Defendant Fine Art Sales, Inc</u>. ("FASI") is a Delaware corporation with offices in the same facility as PWG in Southfield, Michigan.  FASI sells artwork aboard ships of the Cruise Lines.

a.    FASI is owned or controlled by PWG and Scaglione.  FASI is not a publicly held corporation.  Information about FASI, its corporate structure and affiliations with related and non-related Park West persons or entities, John Does 1-50, Royal Caribbean and Holland America is under the exclusive control of FASI, Scaglione or Park West.

b.    FASI participated with PWG and Scaglione in the fraudulent scheme described in this Complaint and conspired with PWG, Scaglione, Royal Caribbean and Holland America to violate RICO, 18 U.S.C. § 1962(c).

12.    <u>Defendant Albert Scaglione</u> ("Scaglione"), a citizen and resident of Michigan. Scaglione is the prime architect of the fraud and conspiracy described in this Complaint. Scaglione is the founder, president and chief executive officer of PWG, having held the position of CEO for forty (40) years.  Scaglione is in charge of the day-to-day operations of PWG and Park West and personally earned millions of dollars from the sale of artwork and Appraisals at shipboard auctions on the Cruise Lines.

13.    Scaglione signed the Appraisals at issue in this Complaint.

14.    Scaglione, as an individual, is the managing member of the single member entity Vista, the Park West affiliate that does business as PWS.

15.    Scaglione controls PWG, PWG FL, Vista and PWS.

7

16.     Scaglione conspired with Royal Caribbean and Holland America to violate RICO, 18 U.S.C. § 1962(c).

17.     <u>Defendants John Does 1-50</u> are the affiliated or non-affiliated persons or entities of Park West that directly or indirectly conduct the auctions or employ the auctioneers that conducted the shipboard art auctions on the Royal Caribbean and Holland America cruises. John Does 1-50 are under the control of Park West and Scaglione. Park West furnishes each auctioneer with a "Policy and Procedure Manual" prescribing techniques and policies to employ while conducting the shipboard auctions and conducts a training program for auctioneer "trainees." In litigation throughout the United States, Park West has maintained the legal position that the auctioneers are "independent contractors."

18.     Park West and John Does 1-50 are referred to together hereafter in this Complaint as "Park West."

**B.     Cruise Line Defendants**

19.     <u>Defendant Royal Caribbean Cruises Ltd.</u> ("Royal Caribbean") is a Liberian corporation with its principal place of business at 1050 Caribbean Way, Miami, Florida 33132.

a.     Royal Caribbean directly or indirectly owns and operates cruise ships that depart regularly from all of the major port cities in the United States under the Royal Caribbean brand. Royal Caribbean is the world's second largest cruise ship company, operating 37 ships and calling on 425 destinations.

b.     In 2008, Royal Caribbean had revenues of approximately $1.4 billion, with 27% of that revenue coming from on board "revenue accounts" or concessionaires like Park West.

8

   c.  Royal Caribbean conspired with Park West, Scaglione and John Does 51-100 to violate RICO, 18 U.S.C. § 1962(c), as described in this Complaint.

  20. <u>Defendant Holland America Line N.V.</u> ("Holland America") is incorporated in the Netherlands Antilles and is headquartered in Seattle, Washington.

   a.  Holland America is a wholly-owned subsidiary of Carnival Corporation and Carnival plc.

   b.  Holland America cruises depart from Massachusetts, Florida, California, New York and Alaska.

  22. <u>Defendants Carnival Cruise Line, Carnival Corporation and Carnival plc</u> (together "Carnival"): Carnival Corporation and Carnival plc operate as a dual listed company, whereby the businesses of Carnival Corporation and Carnival plc are combined through a number of contracts and internal governing provisions. Carnival Corporation is incorporated in the Republic of Panama. Carnival plc is incorporated in England and Wales. Carnival Cruise Line is a subsidiary of Carnival Corporation and plc. Carnival's headquarters is located in Miami, Florida.

   a.  Carnival is the parent company of Holland America.

   b.  Carnival conspired with Park West, Scaglione, Holland America and John Does 51-100 to violate RICO, 18 U.S.C. § 1962(c), as described in this Complaint.

  21. <u>Defendants John Does 51-100</u> are persons or entities who are affiliated (or not affiliated) with Royal Caribbean, Carnival and Holland America and participated in the illegal acts described in the Complaint.

22.     Royal Caribbean and John Does 51-100 are referred to hereafter in this Complaint as "Royal Caribbean"; Holland America, Carnival and John Does 51-100 are referred to hereafter in this Complaint as "Holland America."

## JURISDICTION

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1332, the Class Action Fairness Act of 2005.  The amount in controversy exceeds five million dollar ($5,000,000), exclusive of interest and costs, and members of the putative class number in excess of one hundred (100) and reside in states different from the Defendants. This Court has supplemental jurisdiction over the Plaintiff's common law claims pursuant to 28 U.S.C. § 1367.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1).  Park West and Scaglione reside in this district,   Royal Caribbean and Holland America do business in this district and are present in this district through on-going business relationships with Park West and with the citizens of this State.  A substantial part of the events alleged in this Complaint giving rise to Plaintiff's claims occurred in and were directed from this district.

## FACTUAL ALLEGATIONS

**Park West:**

25.     Park West styles itself as the world's largest art dealer, selling over 300,000 pieces of artwork a year with revenues in 2007 in excess of $300 million.  Half of this revenue was generated by Park West's shipboard auctions on the Cruise Lines which operate the world's most famous and popular cruise ships.

26.     The art auctions are *always* conducted while the ships are cruising in international waters.

27.     Park West has been in business for forty (40) years, and for the last ten (10) years, it has associated with the Cruise Lines to provide art auctions as a recreational event for "cruisers," as leisure passengers are frequently called.  Park West controls a majority of the shipboard art auction business on all cruise lines departing from the United States and operates on over eighty (80) ships.  The launch of Park West's ocean-going venture overlaps with the explosion in popularity of leisure cruises as a vacation choice for Americans.

28.     Over seventeen million (17,000,000) passengers cruise annually.  In the ten (10) year time period since Park West began conducting shipboard art auctions, the leisure cruise industry became the fastest growing segment of the American travel and leisure industry, raking in revenues of thirty billion dollars ($30 billion) in 2008.  The demographics of cruise ship passengers who attend Park West's art auctions consist of well-educated, affluent, middle-to-older aged vacationers with time to spare and money to spend.  The Caribbean is the number one destination from the U.S. for leisure cruises.

29.     By the time Part West launched its shipboard art auction venture, Park West had already established itself as a leader in "popular art" auctions.  Thus, Park West was able to propose to Royal Caribbean and Holland America that shipboard art auctions were money-making "events," with Park West serving as the concessionaire or vendor.  The shipboard auctions provided a new and significant source of revenue for Park West, Royal Caribbean and Holland America, but neither Park West nor Royal Caribbean or Holland America ever disclosed

to Plaintiff and the Class that Royal Caribbean or Holland America had a financial interest in the auctions.

30.    On its website, Park West states that its mission is to bring the experience of researching, collecting and living with fine art to people who do not have access to outstanding galleries and auction houses.  Park West purposefully pitches its fraudulent and deceptive scheme to the naïve art purchaser at shipboard auctions, selling low value, worthless or fake artwork, while misrepresenting to Plaintiff and the Class that the artwork is valuable, a "good investment" and that the artwork will "appraise immediately after purchase for many times the sale price."  These uniform misrepresentations were made by Park West to Plaintiff and the Class on all Royal Caribbean and Holland America shipboard art auctions during the Class Period.

31.    The artwork Park West sells is not what it represents to its customers, including Plaintiff and the Class.  Park West knew, but did not disclose to Plaintiff and the Class that the artwork was not a good investment.[3]  Park West did not disclose that, to the extent the artwork is "original," it is one of a series so large that it ultimately becomes depressed in value, is one of a series of multiple series, was run after the artist's death, was done by another artist ostensibly with the permission of the featured artist or, worse still, was simply a poster.  The artwork purchased by Plaintiff and the Class was not a "good investment" because it will not appreciate in value.

32.    The only reason that the artwork Park West sells appraises for above the dollar amount paid for it by Plaintiff and the Class at the shipboard auction is that Park West *itself* does

---

[3]    "Investment," is defined as "the investing of money or capital in order to gain profitable returns, as in interest, income or appreciation in value." *See* www.dictionary.com.

the appraisal, thus guaranteeing that the number will be where Park West wants it to be – above the hammer price. An independent appraisal will not be for "many times" the price that Plaintiff and the Class paid for the artwork as Park West represents to them at the auction.

**Royal Caribbean and Holland America:**

33.    The Park West proposal was a win-win situation for Royal Caribbean and Holland America.  The costs associated with the auctions were incurred by Park West, thereby making Royal Caribbean's and Holland America's investments minimal.  Royal Caribbean and Holland America provided Park West with a venue to display the art and another to conduct the auction. Royal Caribbean and Holland America also dedicated a block of time, always when the ship was in international waters, for Park West to conduct the auction.  Royal Caribbean and Holland America were careful to limit other recreational activities from competing with the same time period of the auction.  Royal Caribbean and Holland America crews served the provided venues.

34.    For Royal Caribbean and Holland America, the art auctions, like casino-style gambling, became a major form of entertainment that it provided to cruisers, as well as a major source of revenue.  Royal Caribbean and Holland America received a guaranteed revenue stream from Park West *via* the auction sales and concessionaire fees; however, neither Park West nor Royal Caribbean or Holland America ever disclosed to Plaintiff and the Class that the auctions were a revenue center for Royal Caribbean and Holland America.

35.    Royal Caribbean's and Holland America's portion of art auction revenue is computed as a percentage of the auction proceeds (up to 20%) against an agreed (but secret) minimum per voyage.  Plaintiff and the Class spent millions of dollars on purchases of artwork from Park West shipboard auctions on Royal Caribbean and Holland America.

13

36.    The artwork that Park West will auction on any particular cruise is handsomely framed and remains on display throughout duration of the cruise.  Royal Caribbean and Holland America never disclose its financial interest in the art auctions.

37.    Royal Caribbean and Holland America do not stand behind their concessionaires and refuse to offer any relief to Plaintiff and the Class who complain about Park West.  Instead, Royal Caribbean and Holland America continue to allow Park West to conduct its auctions on Royal Caribbean and Holland America cruises.

38.    Royal Caribbean and Holland America select the location and timing of the auction and encourage passengers to attend and mingle at the venue before the auction in the party-like shipboard atmosphere.  Passengers are treated to a free champagne cocktail-hour before the bidding begins, providing time to relax, socialize and preview the artwork that will be offered for sale.  The champagne is provided by Royal Caribbean and Holland America at Park West's expense and is served by members of the Royal Caribbean and Holland America crews.

39.    Shipboard art auctions are enormously successful for Park West, Royal Caribbean and Holland America, earning significant revenue for all.  The financial success of the shipboard auctions depends on the trust placed in Royal Caribbean and Holland America by Plaintiff and the Class.  Park West trades on cruisers' trust and faith in Royal Caribbean and Holland America to sell the artwork at sea and makes the same misrepresentations to auction attendees on cruise after cruise.  Repeat business by cruisers is critical to the success of all cruise lines.  In 2008, one-half (1/2) of all passengers on cruise ships were repeat cruisers.  Repeat Royal Caribbean and Holland America cruisers would be familiar with Park West, having seen them while on board a previous cruise.

40.     With Royal Caribbean's and Holland America's knowledge, cooperation and agreement, Park West used the reputation of Royal Caribbean and Holland America to lure Plaintiff and the Class to the auctions and to close sales.  Plaintiff and the Class were unaware of the implications of Royal Caribbean's and Holland America's foreign registries and that they were not American entities, even if departing from the United States.  Passengers were generally unaware that, in the event of a dispute, Royal Caribbean, Holland America and Park West would claim to be insulated by international or admiralty law from consumer claims.

41.     Royal Caribbean and Holland America facilitated Park West's fraud by allowing Park West, which is an American entity, to piggy-back on their legal insulation under admiralty law by deliberately scheduling the Park West art auctions only when the ship was in international waters.  Royal Caribbean and Holland America "close down" Park West's auctions and private sales (see below) while the ship is in port or in the territorial waters of any port of call, deliberately creating the impression for Plaintiff and the Class, that there is a legal impediment to Park West's operating in port (similar to the legal impediments for operating casino gambling while in port.)

42.     Royal Caribbean and Holland America further facilitate Park West's illegal scheme by allowing cruisers to pay for their Park West purchases and the Park West phony Appraisals on the ship's bill (which each ship renders to passengers immediately prior to disembarking).

43.     Royal Caribbean and Holland America never disclosed to Plaintiff and the Class that they receive a percentage of the auction sale proceeds or that their profitability depends on the success of shipboard venders, including Park West.

44.    Royal Caribbean and Holland America actively assisted and conspired with Park West and Scaglione in the scheme alleged in this Complaint.  The pattern described in the Complaint is without substantial variation on all Royal Caribbean and Holland America cruises: prominent display and auction venue on board the ship, champagne preview, auctions scheduled only in international waters, piggy-backing on Royal Caribbean's and Holland America's reputations, and sales made by means of uniform fraudulent misrepresentations that the art is a "good investment" and will "immediately appraise" for more than the price paid and payment made *via* credit card or on the ship's bill.

45.    Sponsorship by Royal Caribbean and Holland America provides Park West with respectability and access to a large, affluent captive audience.

46.    Over half of the 200,000 American passengers who cruise annually during the Class Period (defined below) resided in Florida, California, Texas, New York, Pennsylvania and Massachusetts.

**The Shipboard Auctions:**

47.    The Park West shipboard auctions are carefully orchestrated by Defendants to generate maximum interest among the passengers.  The auctions are conducted by auctioneers who are either employed (directly or indirectly) by Park West or Scaglione or under Park West's or Scaglione's control.  The "private sales" described herein are part of Park West's shipboard auctions.

48.    Prior to the opening auction on any Cruise Line cruise, the artwork to be auctioned is displayed by Park West at a prominent shipboard location, including "works" by Dali, Picasso and Rembrandt to serve as a draw.  The start time for the auctions is prominently

16

featured on the ship's daily calendar, on-board website and is announced over the ship's loud speaker system immediately before beginning.

49.    The auctioneers and other Park West employees (together "auctioneer(s)") circulate among the passengers who come to preview the artwork in order to encourage participation in the bidding and to misrepresent to Plaintiff and the Class, in a uniform sales pitch used at all Park West shipboard auctions on Royal Caribbean and Holland America cruises, that: (1) the auctioneers have expertise in art, which they do not; (2) the artwork to be offered at auction is a "good investments," which it is not; (3) the artwork is "original," which it is not, (4) the artwork actually received will be a "unique variation" (not a copy) of artwork displayed, a meaningless term, and (5) any artwork purchased at auction "will appraise immediately on shore for many times the auction purchase price," which is blatantly untrue. Also during the preview, the auctioneers promise a surprise giveaway at the first auction as yet another hook to attract bidders to the auction, all occurring within earshot of the Royal Caribbean and Holland America crews.

50.    Employees of Royal Caribbean and Holland America circulate during the preview, serving champagne and tidying up the venue post-cocktail hour.

51.    When bidding begins, it is conducted under the direction of auctioneers who are trained by Park West.  Park West employs a "Principal Auctioneer" in Michigan who instructs and trains auctioneers.   The sales pitch employed by the auctioneers touts the investment value of the artwork and includes a sales patter fixing the value of each piece at a dollar amount developed by Park West prior to the auction. This value is then used by Park West as the Appraisal value, which is supplied to the customer after the sale.

52.    At each auction, auctioneers represent the artwork to be a "good investment" and state that any purchase "will immediately appraise for many times" the purchase price.

53.    At the first auction on each voyage, auctioneers pretend to "sacrifice" an "important" artwork for a seemingly ridiculously low price, sometimes as low as fifty dollars ($50.00), in order to stimulate bidding.  Bidding is fast paced and reflects the general party atmosphere aboard ship where passenger spending is not only encouraged but crucial to the financial success of the Cruise Lines.  The auctioneers engage in high pressure tactics, belittling bidders who hesitate to bid higher and always speaking with the pistol shot speed that is the auctioneer's stock-in-trade.

54.    Plaintiff and the Class are not told by Park West before or during the auction whether a sellers' reserve will be applied, or whether shilling (bidders who are put-ups by Park West and have no intention to purchase) or phantom bidding (bids called with no bidder) are permitted at the auction. While some of these practices are legal under the laws of some states, or may be otherwise regulated by state law, Park West, with the facilitation of the Cruise Lines, times the auctions to operate out of the reach of state laws regulating auctions.  All Park West ever discloses to Plaintiff and the Class is the minimum bid.

55.    Auctioneers encourage cruisers to purchase at the auctions by emphasizing that the auction is taking place on board a famous, well respected Cruise Line such as Royal Caribbean and Holland America, typically stating, *e.g.*, "Do you think Royal Caribbean (or Holland America) would allow us to have a shop here if we were fraudulent? If we were not reputable?"  At least half of the passengers will recognize Park West's auctions from other Royal Caribbean or Holland America cruises, reinforcing Park West's credibility.  Park West omits to

18

disclose the Cruise Line's financial interest in the auction.  All of these misrepresentations, made at all auctions, are made openly and are therefore well-known to Royal Caribbean and Holland America, whose officers and employees can hear these misrepresentations being made (and have heard them before). The auctions are conducted in a public space on the ships where the ships' officers and crew have full and easy access to the proceedings.

56.    Different works or "lots" of artwork are made available for sale by Park West each day at the auctions as the cruise progresses.  This procedure assures Park West has new works to auction each night, replenishing the supply of artwork and encouraging repeat business from passengers who might otherwise not attend more than one auction per cruise.

57.    Successful bidders pay a "hammer price" (highest bid) plus a buyer's premium, shipping and handling and framing (optional).

58.    At the auctions, as bidding is closing down (because the Cruise Line has a competing recreational activities scheduled or another activity booked for the venue), the auctioneer encourages the cruisers at the auctions to attend a "private sale," where the unsold artwork will be displayed and available for purchase.  As part of the fraudulent scheme, the auctioneers tell Plaintiff and the Class that the artwork available at a private sale is an even better value than the artwork auctioned because there are no other bidders at the private sale to drive up prices.  Purchasers at the private sale still pay the buyer's premium as if the artwork had been purchased at the auction.

59.    The Park West practices described above were followed on every Cruise Line cruise, including Royal Caribbean and Holland America, where Park West conducted an auction.

**Park West Contracts for Sale:**

60.     Until September 2008, Park West had a strict **NO REFUND** policy.  But the existence of this policy was never disclosed to Plaintiff and the Class until *after* purchase when Plaintiff and the Class were able to see the "all sales are final" language on the invoice that Park West gave as proof of purchase to all successful bidders.

61.     A materially identical invoice was given to Plaintiff and the Class by Park West for each shipboard art purchase.  The invoice is a two sided pre-printed form document generated by Park West.  It affords no opportunity for the Plaintiff and the Class to negotiate or change any of its terms.  *See* Exhibit A for sample invoice.

(a)     The front of the invoice records the purchaser's name and address with a list and description of the items purchased.  At the bottom of the first page is a pre-printed paragraph (the language of which has not changed substantially over the 10-year period of the scheme's operation) acknowledging purchase and receipt of the invoice and "agreeing" that no verbal agreements or representations remain in effect except as written on the invoice.

(b)     The back of the invoice records "additional terms and conditions," including:

- "All sales are final…"

- "Appraisals represent our opinion of the price a client would have to pay to replace the work through *a reputable retail art gallery*.  We do not rely on third party auction prices or internet prices to arrive at the appraised value.  We do not issue refunds if another appraiser has a different opinion than ours."

*See* Exhibit A (emphasis supplied).

62.     Plaintiff and the Class paid for the art purchased by credit card while on board the ship.  Passengers carrying "insufficient funds" with them to pay for costly artwork can also

immediately apply for a Park West Gallery credit card called a "Park West Collectors Card." Application and approval for the Park West Collectors Card are accomplished for the purchaser while on board the ship through the use of the telephone or wires.

63.    Another method of payment commonly used by Park West, with Royal Caribbean and Holland America's knowledge and agreement, is to add the purchase price for the artwork to the ship's bill.  These bills too were paid by Plaintiff and the Class using credit cards that transfer funds electronically.  Ship bill costs are placed on the credit card accounts of Plaintiff and the Class, which are in turn paid by Plaintiff and the Class through the mail or by wire transfer.

64.    Park West now offers a limited refund or return policy.  Park West requires that the buyer forfeit the buyer's premium and pay all costs for shipping, handling and insurance (both ways) to return the artwork.   Money is refundable for 40 days.   The artwork is exchangeable for 40 months.  The exchange privilege can only be applied to selected artwork *chosen by Park West.* For all refunds or exchanges, the buyer must sign a confidentiality agreement and release, releasing both Park West *and the Cruise Lines.*

65.    The artwork sold by Park West (that cannot be carried off the boat) is generally delivered to the buyer at his/her home address *via* Federal Express six (6) weeks after purchase.

66.    A Certificate of Authenticity is placed inside the box at delivery.  The promise of the Certificate of Authenticity is touted at the auctions and is yet another hook used by Park West.

67.    The Appraisals for the artwork were delivered to Plaintiff and the Class *via* the U.S. Mails.

**Park West's Appraisals (the "Appraisals"):**

68.    Park West offers successful bidders the opportunity to purchase an Appraisal for an additional fee of thirty-five dollars ($35) for the first Appraisal and fifteen dollars ($15) for each additional Appraisal.  Sometimes the Appraisal is automatically tacked onto the purchase price for the artwork or is "complimentary" with the purchase of an expensive piece.  Appraisals are paid for either by credit card or on the ship's bill, just like the artwork.

69.    The Appraisals were mailed separately from the artwork *via* U.S. Mail to Plaintiff and the Class after or about the time the artwork is delivered.

70.    Scaglione signs the Appraisals.  In those instances where Scaglione did not sign the Appraisal, the Appraisal was signed at Park West's and Scaglione's direction.

71.    The appraised value in the Appraisal is *always* greater than the purchase price paid by Plaintiff and the Class.

72.    The Appraisals are fraudulent and deceptive with the purpose and intent to mislead Plaintiff and the Class about the meaning and content of the Appraisal and the value of the artwork purchased.  The Appraisals also serve to lull Plaintiff and the Class into a false belief concerning the value of their shipboard art purchases.  The Appraisal's function is to validate the purchase price paid by Plaintiff and the Class and to conceal Park West's misrepresentations by falsely appraising the artwork for many times the purchase price.  Plaintiff and the Class relied on the representations concerning the Appraisals they received as proof that the purchase made was a "good investment."  The Park West, Scaglione and the Cruise Lines knew, or were reckless in not knowing, that the representations made concerning the Appraisals were false and fraudulent.

73.     Park West used the same or substantially identical Appraisal form for each Class member's purchase. The Appraisal is a form letter that states:

> "The following work of art has been *examined* by Park West Gallery.  In *our* opinion the current *gallery retail replacement price* for this work, including its frame is [$$$]…"

*See* Exhibit B.

74.     Park West never disclosed to Plaintiff and the Class that the Appraisal would be performed by Park West, alone, and entirely without objectivity or generally accepted methodology.  The language of the invoice referring to the Appraisal deliberately misstates and implies that Park West or its designate will employ an objective methodology to arrive at its valuation for the Appraisal.

75.     There is no statement from Park West that the Appraisal is being prepared for any specific limited purpose other than what is represented at the auction, which is to provide an objective valuation of the artwork purchased by Plaintiff and the Class.

76.     The Park West Appraisal is not an independent, objective valuation of the artwork, but rather a phony, self-interested, fraudulent and biased misrepresentation designed to forestall lawsuits and to deceive Plaintiff and the Class into believing that the **purchase price** paid for the artwork is a "good investment." Park West employs no generally accepted methodology to appraise the artwork other than Park West's "because I say so" or *ipse dixit* valuation of the artwork.

77.     According to the American Society of Appraisers ("A.S.A."), when an appraiser has an interest in the property appraised (as Park West does here as the seller), it is unethical for

an appraiser to accept an assignment to appraise a property (here, appraise the value of the artwork) *unless* there is full disclosure to the client.  Park West does not make full disclosure.

78.     Park West misrepresented to Plaintiff and the Class the methodology employed by Park West for the Appraisal and the value of the artwork purchased.  Park West misrepresented to Plaintiff and the Class that the Appraisal is the result of its research of a price that would be paid by "a reputable retail art gallery," omitting to state that the "reputable retail art gallery" was Park West and that Park West is the only art gallery consulted on the Appraisal value.  Park West has admitted in other legal proceeding filings that it has no appraisal methodology other than the methodology described herein.[4]

79.     By stating or implying that Park West accessed information from objective, non-related parties and reputable art galleries to arrive at the valuation of the artwork in the Appraisal and by omitting to disclose that the only valuation the Appraisal would supply would be Park West's own interested opinion, Park West intentionally deceived Plaintiff and the Class.

80.     Plaintiff and the Class did not learn of or know about the deficiencies in the Appraisal at the time of purchase.

**The Fraudulent Scheme:**

81.     The artwork auctioned off by Park West on the Cruise Lines' shipboard auctions were not what Park West represented them to be.  Namely, the artwork was not valuable, not a good investment, not museum quality, not original and oftentimes fake.  Park West deliberately and fraudulently misrepresented to Plaintiff and the Class, in its uniform sales pitch used on all

---

[4]     *See* Plaintiff David Bouverat's Memorandum in Opposition to Defendant Park West's Motion for Summary Judgment, *Bouverat v. Park West Gallery, Inc.*, Case No. 08-31331 (S.D. Fla. March 27, 2009).

Cruise Line cruises within the hearing and knowledge of Cruise Line personnel, that the artwork sold at shipboard auctions was a "good investment," something to "leave to the grandkids" and would, once on shore, "immediately appraise for many times more" than what Plaintiff and the Class had paid for the artwork because the artwork was "original" and "touched by the artist's hand."

82.    Park West knew, but never disclosed to Plaintiff and the Class at the shipboard auctions, that:

(a)    Dali forgeries abound in the Park West shipboard auctions (and other galleries). Dali is a prominent "hook" artist for Park West.

(b)    The Rembrandts offered for sale, Rembrandt Wood Cuts, sold sometimes for as much as $10,000 each, are in fact modern prints (perhaps made from the original woodcut) that are neither rare nor valuable. Thousands of these "original" Rembrandts are available, and the prints have little chance of appreciation in value and are not a "good investment." Park West never discloses that the Rembrandt prints were not made during the artist's lifetime.

(c)    Some Park West artwork for sale (all artwork is framed when displayed shipboard) is merely an ink-jet print, little better than a poster.

(d)    The signed and numbered artwork from a series that Park West sells is from a very large series or from one of several series and have little, if any, appreciation value, although Park West represents them to be a "good investment." Park West only discloses the number in the series when the number is low, but not how many iterations were in the series or if there is more than one series on the market.

(e)    Park West does not disclose when Park West is the only dealer for a particular artist or the work that is offered for sale.

(f)    Park West artists often negotiate bulk sales of their work with Park West, diminishing the value and making Park West the sole or primary dealer for that artist or particular work.

(g)    Artwork sold as "signed by the artist" may have suspect signatures or reproduced pencil signatures.

(h)    Artists' "proofs" of limited editions are editions in addition to the limited edition of the work or that more than one "limited edition" of the same work has been produced.

(i)    Park West always describes the pieces it offers for sale at shipboard auctions as "artwork" or "paintings," even when the work is a print.

(j)    The artwork auctioned was not a good investment.

(k)    The artwork would appraise for a value greater than the purchase price *only if Park West or Scaglione* (or someone under their control) did the Appraisal.

83.    Reputable art galleries disclose the date of a work that is one in a series for which multiple series may exist, as well as the number in the series and the number of series in existence.  Reputable galleries also disclose the methodology for the preparation of a print or lithograph offered for sale and whether the print was created by the artist or by another person at the artist's direction, as well as the date of the print preparation and total number in circulation. Reputable galleries always disclose the provenance of "original" works of art.  Park West never disclosed to Plaintiff and the Class the details and provenance (as described in this paragraph) for

the artwork sold at its shipboard auctions and, in fact, sold the artwork with deliberate misrepresentations.

84.     Plaintiff and the Class are not sophisticated purchasers of art.  Plaintiff and the Class relied on the representations of Park West and the reputation and sponsorship of the Cruise Lines in making their purchases.

85.     Royal Caribbean and Holland America knew, or were reckless in not knowing, that their participation was essential to operation of the fraudulent scheme.  Upon information and belief, Royal Caribbean and Holland America have received numerous complaints from dissatisfied Park West customers throughout the Class Period.

86.     At every shipboard auction on every Royal Caribbean and Holland America cruise, Park West sells or offers to sell an Appraisal for each artwork purchased at the auction. The Appraisals are worthless, deceptively designed to reinforce Park West's deceit and the inflated value of the purchase made by Plaintiff and the Class and to conceal the Defendants' illegal scheme.

87.     Royal Caribbean and Holland America knowingly permit Park West to collect its ill-gotten gains from Plaintiff and the Class by placing the charges for artwork purchases and Appraisals on the ship's bill.

88.     On September 1, 2008, Park West launched its "40-40 program."  The program promises that all purchasers may return artwork purchased from Park West for a full refund or exchange within forty (40) days of receipt for the full purchase price, less the buyer's premium (up to $1000) plus shipping and handling.  For forty (40) months after the date of the invoice,

purchasers can exchange their purchase for another work of art from Park West of equal or greater value, but the work is selected by Park West.

89.     When Park West settles claims with disgruntled customers by refund or exchange, the settlement is always subject to a mutual confidentiality agreement, mutual releases and release of the Cruise Line.

**Park West's Legal Maneuvering**:

90.     Park West, with the facilitation and cooperation of Royal Caribbean and Holland America, hides in international waters.  The Cruise Lines carefully schedule the auctions to *never* take place while the ship is docked in any port and *never* within the territorial waters of any port-of-call.  The Cruise Lines schedule the art auctions in the late afternoon (around the cocktail hour and, in fact, serve the cocktails) and ***always*** after the ship has left port and is cruising international waters.

91.     Conducting business in international waters is important to Park West's deceptive scheme because it provides a legal cloak in Park West's ongoing attempt to limit the legal protection of the states' consumer protection laws to Plaintiff and the Class, even if the ship departs from the United States.  Park West also argues in legal actions to limit the reach of federal laws to its activities.

92.     Business conducted on the "high seas" that "bears a significant relationship to maritime activity"[5] is governed by admiralty law.  18 U.S.C. § 1333, the "saving to suitors" clause in admiralty jurisdiction law, refers a forum court to the law of the home state of the plaintiff for remedy in the event of litigation.  Royal Caribbean and Holland America, more often

---

[5]      *See Beegal v. Park West*, 925 A.2d 684, 696 (N.J. Super. Ct. App. Div. 2007).

than not, depart from ports that are not in the home state of most, if not all, of its passengers (Plaintiff's home state is Washington D.C.). Park West also does not usually have any "presence" in any of the passengers' home states. As a result, in a lawsuit brought in a Plaintiff's home state, Park West will be able to argue that each is not amenable to process or that they are not within the personal jurisdiction of the home state court (even under long-arm statutes).

93. For example, a lawsuit by a California resident alleging violations of the California consumer protection laws by Park West was dismissed for lack of personal jurisdiction over Park West. At issue in the complaint were Plaintiff's shipboard purchases of artwork at auction and the purchase of phony Appraisals. Plaintiff sued on behalf of a putative class of California residents, but Park West argued lack of personal jurisdiction, successfully demonstrating to the court that Park West conducted no business in California (even though the Cruise Line did). *See* Order, *Bautista v. Park West Gallery*, Case No. 2:08-cv-03717-PSG-r2 (C.D. Cal. Sept. 2, 2008).[6]

94. Exterritorial application of the consumer protection laws of the Plaintiff's home state provides still another legal hurdle for disgruntled purchasers. A lawsuit by a Florida resident filed in Florida (where Park West can be found), alleging consumer fraud on behalf of a class of Florida purchasers in violation of the Florida consumer protection laws, is still pending. Park West has moved for summary judgment arguing: (1) that Florida law cannot apply to art purchases made by Plaintiffs in international waters, here the Baltic Sea, (2) Florida law cannot have exterritorial application, and (3) that admiralty law preempts Florida consumer law. *See*

---

[6]    A subsequent refiling of this complaint was dismissed on the grounds of collateral estoppel. Order, *Bautista v. Park West Gallery,* Case No. CV08-6262-PSG (RZx) (C.D. Cal. Dec. 11, 2008).

Def. Park West's Motion for Summary Judgment, *Bouverat v. Park West Gallery, Inc.*, Case No. 08-31331 (S.D. Fla. Oct. 29, 2008).

95.    In another lawsuit pending in Michigan state court, Park West took a different and more aggressive approach.  In *Best v. Park West Gallery, Inc.*, Case No. 0896952-C2 (State of Michigan, Circuit Court for the County of Oakland, filed Dec. 23, 2008), Plaintiffs are seven individuals, one of whom is a Michigan resident. Plaintiffs, who did not file a class action, alleged violations of the Michigan Warranty in Fine Arts Act for Park West's fraud related to the sale of artwork. Park West fired back with a counterclaim for damages against Plaintiffs, alleging defamation, tortious interference with business relationships and civil conspiracy.

96.    In yet another lawsuit, *Blackman v. Park West Galleries Inc.*, Case No. 2:08-1310 (W.D. Wash. Sept. 2, 2008), Park West has also argued that federal law cannot apply to its auctions in international waters.

97.    Park West's goal in conducting its auctions only in international waters is to escape the reach of the state courts and avoid the application of state consumer protection laws to its illegal activities.  Thus far, with the facilitation of Royal Caribbean and Holland America, Park West has been successful.

**Purchases by Plaintiff at Park West Shipboard Auctions:**

98.    Plaintiff incorporates by reference all preceding  paragraphs as if fully set forth in this paragraph.

(a)    Plaintiff Sean Mullen is not a sophisticated purchaser of art. Plaintiff works in finance profession and is employed as a Director of Institutional Services, where he

consults institutional advisors on how to manage money. Plaintiff's transactions with Park West are typical of Park West's transactions with the Class.

       (b)    Plaintiff purchased a ticket online for a Royal Caribbean cruise to the Southern Caribbean aboard the *Serenade* on Royal Caribbean's website several months before the cruise in December 2003, departing from San Juan, Puerto Rico.

       (i)    The ticket was paid for by a charge to Plaintiff's credit card account (VISA), which transfers funds electronically.  Plaintiff pays his VISA bill by electronic transfer.

       (ii)    The ticket arrived at Plaintiff's home *via* U.S. Mail within weeks of the contact with Royal Caribbean.

       (c)    Mullen attended all of the Park West shipboard auctions and private sale events while on the *Serenade*.

       (i)    The auctioneer represented to Mullen (and the other cruisers that attended the auctions) that the artwork to be auctioned was a "good investment" and that it "would appraise for many times its sale price" immediately upon reaching shore.  Mullen relied on Park West's misrepresentations that the artwork purchased was a "good investment" that "would appraise for many times the sales price" in deciding to purchase.

       (ii)    He bid on and purchased the following three works (*see* Table I):

### TABLE I

| ARTIST | WORK | HAMMER PRICE | BUYER'S PREMIUM | PURCHASE PRICE |
|---|---|---|---|---|
| Francois Fanch | Dalinian Skyscrapers | $1,250.00 | $187.50 | $1287.50 |
| Francois Fanch | Interior With Buddah | $270.00 | $40 - 50 | $310.50 |
| Francois Fanch | Overlooking Chicago | $125.00 | $18.75 | $143.75 |

31

As a "promotional" gesture, Park West "gave" Mullen two additional pieces of artwork at no charge: "Venice Yellow Sunset" by Anatole Krasnyansky and "Indigo Chapeau" by Itchak Tarkay.

(iii)    The purchases were made during the shipboard auction conducted in international waters.

(iv)    Two of Plaintiff's purchases ("Interior With Buddah" and "Overlooking Chicago") arrived at his home *via* the mail with no issue. However, Plaintiff paid extra for the "Dalinian Skyscrapers" represented to contain "artist touches," but the piece had not arrived after waiting over three months. Plaintiff called Park West inquiring about the painting, and Park West was unable to locate it. Mullen requested to cancel the purchase, which Park West refused. Subsequent to this conversation with Park West, Mullen telephoned VISA and attempted to cancel the purchase through the credit card company. Immediately upon VISA initiating the cancellation process, Mullen received a telephone call from Park West, who miraculously had "found" his painting, and they provided him with a UPS tracking number, stating that the painting had already been shipped. Plaintiff decided to accept the painting; however, the artwork arrived at his home *via* UPS with no special "artist touches."

(iv)    The auctioneer only used the words "artwork" and "paintings" at the auction in describing the artwork, even though the artwork is a lithograph or seriograph.

(v)    Mullen received invoices as proof of purchase at the auction. The invoices are identical in all material respects to the invoices described above in this Complaint. *See* Exhibit C.

32

(vi)     The cost of the artwork was paid for by Mullen on his VISA account.

(e)     Mullen cruised to the Eastern Caribbean, departing from Ft. Lauderdale, Florida, in May 2005 aboard the Holland America ship, the *Zuiderdam*.

(i)     Mullen purchased the tickets through the internet website Expedia.com several months before the cruise.

(ii)     The tickets were paid for by charges to Plaintiff's credit card (MasterCard) which transfer funds electronically to MasterCard.

(iii)     The tickets arrived at Plaintiff's home *via* U.S. Mail.

(g)     While on board the *Zuiderdam*, in international waters, Plaintiff attended each of the Park West shipboard auctions and a special Park West on-board event.

(i)     The auctioneer represented at the auctions to Mullen (and other passengers in attendance) that the artwork offered for sale was a "good investment" that "would appraise for many times its sale price" and that the artwork being auctioned would make an excellent charitable gift because of its "appreciation potential."

(ii)     Mullen purchased the following paintings and Appraisals while on board the *Zuiderdam* (*see* Table II):

**Table II**

| ARTIST | WORK | HAMMER PRICE | BUYER'S PREMIUM | SALE PRICE | APPRAISAL |
|---|---|---|---|---|---|
| Linda Kinff | "Odile" | $495.00 | $74.25 | $524.25 | $795.00 |
| Marc Chagall | "Bay of Angels" | $1550.00 | $232.50 | $1782.50 | $2950.00 |
| Salvadore Dali | "Divine Comedy Purgatory I" | $6345.00 | $951.75 | $7296.75 | $10,995.00 |

(iii)    Park West offered Plaintiff the opportunity to attend a "private event," advertising that there would be "special prices" for the artwork on display. Plaintiff attended and expressed his interest in the Chagall and Dali pieces purchased and requested that the auctioneer provide him with a quote for both works. The auctioneer offered Plaintiff a price that included the cost of the works, the framing and the appraisal, which Plaintiff accepted.

(iv)    Mullen paid for the paintings by adding the charges to his ship's bill and then paying the bill with his MasterCard *via* electronic funds transfer.

(v)    Mullen purchased the artwork on the *Zuiderdam* while the ship was in international waters.

(vi)    Park West represented art offered for sale at each auction Mullen attended on the *Zuiderdam* to be "a good investment" whether sold at the auction or at the private event.  With respect to the Dali works offered for sale, the auctioneer on the *Zuiderdam* praised the authenticity of the Dali because years of fraud had brought down the price.

(vii)    The artwork Plaintiff purchased was not a good investment.  The Dali is a wood engraving, one of 3000 wood block engravings executed by Raymond Jacquet, and it is signed by Juan Estrade (not Dali).  This provenance was not disclosed to Mullen prior to the sale or at the auction. In fact, because of the representations made by Park West and Plaintiff's reliance and belief in the value of the Appraisal he received for the Dali "Purgatory" piece that he purchased from Park West, Plaintiff was prompted to complete his collection of the Divine Trinity series, purchasing the remaining two pieces ("Heaven" and "Hell") of the trilogy from another online art retailer (*i.e.*, not from Park West).

(ix)    Mullen received Appraisals for each work identified in Table II. Each of the Appraisals was signed by Scaglione, sent to Plaintiff's home by U.S. Mail and dated: August 1, 2005; June 30, 2005; and June 22, 2005.  *See* Exhibit D.  The Appraisals are identical to the Appraisals described above in this Complaint.

(x)    Each Appraisal states on its face, "In our opinion, the current gallery retail price for this work, including frame is [$$$] …."    On the reverse side of each Appraisal, the "Terms of Appraisal" states:

Method of Appraisal

The appraisal represents our opinion of the price a willing buyer would pay a willing seller to acquire the artwork, with neither being under a compulsion to sell or buy. In making this determination we rely on gallery prices of reputable art galleries and other reliable price data and lists. We do not rely on third party auction prices or internet prices to arrive at appraised value.

(h)    These Appraisals are false and deceptive because they are not independent valuations of the artwork but merely Park West's fraudulent device and part of its fraudulent scheme.

(i)    Park West has no appraisal methodology other than the "methodology" described on the Appraisals.

(j)    The artwork purchased by Mullen is not a good investment and have little (if any) likelihood of appreciating in value.  Mullen relied on the representations of authenticity and value in making his purchases.

(k)    But for Park West's misrepresentations and Royal Caribbean and Holland America's facilitations, Mullen would not have purchased the artwork at the auctions.

**Plaintiff Discovery of the Fraud:**

99.    Plaintiff continued to believe in the validity of the Appraisals and that the value of their Park West purchases were as appraised by Park West until 2008.

100.    On July 16, 2008, an article appeared in the *New York Times* entitled "Art Auctions on Cruise Ships Lead to Anger Accusations and Lawsuits," by Jori Finkel.  The article detailed sales of low value or worthless "artwork" by Park West at shipboard auctions conducted in international waters, employing representations that the artwork offered by Park West was "museum quality" or "good investments."   The article further detailed the difficulty purchasers encountered in obtaining any satisfaction from Park West on their complaints.  The article stated that whenever there was a settlement with a disgruntled customer, Park West required confidentiality.

101.    After doing some internet research, Mullen contacted counsel.

## FRAUDULENT CONCEALMENT

102.    The truth of Park West's deceptive scheme and the fraud alleged in this Complaint was wrongfully concealed by Defendants from Plaintiff and the Class.

103.    Park West had a duty to disclose the true value and provenance of the artwork sold at shipboard auctions and to furnish non-deceptive Appraisals when selling appraisals. Notwithstanding this duty, Park West never disclosed the provenance of the artwork, that the artwork was not a good investment and that the Appraisals were phony, self-serving biased statements, utterly worthless for valuing the artwork.  Park West, Royal Caribbean and Holland America never disclosed their revenue sharing arrangement.

36

104.    As demonstrated by the allegations in the Complaint, Park West employed and continues to employ the same fraudulent practices to sell artwork at shipboard auctions. Royal Caribbean and Holland America continue to offer Park West auctions as a recreation activity for cruisers and to schedule Park West auctions on its cruises while the ship is in international waters.

105.    Park West employs tactics of intimidation and secrecy to avoid detection, which is evidenced by its litigation maneuvers, such as counterclaiming against Plaintiffs.  These strategies are used by Park West to fraudulently conceal its illegal conduct, and all settlements with complaining customers are subject to strict confidentiality agreements and waivers.

106.    Through public statements made by Park West and on its website, Park West continues to deceive, trumpeting that it has never sold phony artwork.  Royal Caribbean and Holland America continue to conspire with Park West by scheduling shipboard auctions on cruises in international waters where Park West continues to misrepresent the value of the artwork.

107.    Park West, Royal Caribbean and Holland America successfully concealed from Plaintiff and the Class facts that would be sufficient to excite suspicion regarding the claims against them due to Park West's deception, conspiracy and continued operations.

108.    The information that Plaintiff and the Class required to discover their claims and to prosecute this Complaint is under Defendants' exclusive control.  Park West is not a publicly held corporation and neither Royal Caribbean or Holland America is a domestic corporation, limiting the information available to Plaintiff and the Class.

109.    Plaintiff and the Class could not have acquired knowledge sufficient to initiate this action through their exercise of reasonable diligence. Defendants are estopped from asserting any statute of limitations as a defense to the claims in this Complaint by virtue of Defendants' acts of fraudulent concealment.

110.    Plaintiff and the Class were not effectively alerted to the existence and scope of this fraud and were not on notice of their potential claims until shortly prior to the filing of this Complaint.

111.    The applicable statutes of limitations for Plaintiff's and the Class's claims against Park West, Royal Caribbean and Holland America are tolled by Defendants' fraudulent concealment of their actions as alleged in this Complaint.

## ART AUCTION ENTERPRISES I-III

112.    Plaintiff incorporates by reference all preceding paragraphs as if fully set out in this paragraph.

(a)    PWG, PWG FL, Vista, FASI, Scaglione, Royal Caribbean and Holland America are each a "person" distinct from the Art Auction Enterprises I-III (hereafter "Art Auction Enterprise(s)" or "Enterprise(s)").

(b)    Each of the Art Auction Enterprises described in this paragraph is an association-in-fact Enterprise within the meaning of RICO, 18 U.S.C. § 1961(4).  The Enterprise is an organization, functioning as an ongoing and continuing unit that was created or used as a tool by Park West and Scaglione, with the facilitation of Royal Caribbean and Holland America, in order to effectuate the common goals of financial remuneration through the pattern of racketeering activity as alleged in this Complaint.

38

(c)    Defendants' racketeering activities, as described in this Complaint, amounted to a common course of conduct.  Defendants intended to deceive and harm Plaintiff and the Class Members.  Each racketeering activity alleged was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiff and the Class.  Defendants' racketeering activities were part of its ongoing business and constitute a continuing threat to the property of Plaintiff and the Class.

(d)    Park West and Scaglione designed the Art Auction Enterprises to accomplish the common goals shared by each of its members as detailed above in this Complaint.

(e)    Park West and Scaglione conducted or operated the Art Auction Enterprises.

(f)    Royal Caribbean and Holland America conspired with Park West and Scaglione to accomplish the goals of the Art Auction Enterprises and to violate RICO, 18 U.S.C. § 1962(c).

(g)    The Art Auction Enterprises function as a continuing unit with each member of the Enterprise knowing its (or their) role and performing its part or role to assure the Art Auction Enterprises' continued success.  Members of the Enterprises participate together in the fraudulent scheme, as described above in this Complaint.

(h)    Each of the Art Auction Enterprises has been in existence for ten (10) years and continues in existence to the present.

(i)    The Park West-Royal Caribbean Art Auction Enterprise (the "Art Auction Enterprise I") is an association-in-fact enterprise within the meaning of RICO, 18 U.S.C. § 1961(4), comprised of  Park West, Scaglione and Royal Caribbean.  Park West and Scaglione designed and conducted the Art Auction Enterprise I to accomplish the goals shared by its members.  Royal Caribbean conspired with Park West and Scaglione to accomplish the goals of the Art Auction Enterprise I.

(j)    The Park West-Holland America Art Auction Enterprise ("Art Auction Enterprise II") is an association-in-fact enterprise within the meaning of RICO, 18 U.S.C. § 1961(4), comprised of Park West, Scaglione and Holland America. Park West and Scaglione designed and conducted the Art Auction Enterprise II to accomplish the goals shared by its members.  Holland America conspired with Park West and Scaglione to accomplish the goals of the Art Auction Enterprise II.

(k)    The Park West-Cruise Line Art Auction Enterprise (the "Art Auction Enterprise III") is an association-in-fact within the meaning of RICO, 18 U.S.C. § 1961(4), comprised of Park West, Scaglione and the Cruise Lines.  Park West and Scaglione designed or conducted Art Auction Enterprise III as a tool to effectuate the pattern of racketeering activity and the goals shared by its members. The Cruise Lines conspired with Park West and Scaglione to accomplish the goals of the Art Auction Enterprise III.

113.    Park West and Scaglione created and conducted The Art Auction Enterprises to accomplish common goals that were necessary to accomplish their fraudulent scheme to auction low value, forged or worthless artwork at shipboard auctions on the ships of the Cruise Lines and to sell meaningless, phony Appraisals of that artwork as alleged in this Complaint.

114.    Defendants' racketeering activities as described in this Complaint amounted to a common course of conduct with the Enterprises, intended to deceive and harm Plaintiff and the Class Members.  Each racketeering activity alleged was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiff and the Class.  Defendants' racketeering activities were part of their ongoing business and constitute a continuing threat to the property of Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

115.    Plaintiff bring this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of:

**The Class:**

All persons residing in the United States, who purchased artwork and Appraisals at shipboard auctions conducted by Park West Galleries, Inc., PWG Florida, Inc., Vista Fine Art LLC d/b/a Park West at Sea and/or John Does 1-50 (together "Park West") on a ship owned or operated by any of the following Cruise Lines:  Regent Seven Seas, Royal Caribbean, Celebrity, Carnival, Norwegian Cruise Line, Oceania, Disney, Holland America during the applicable statute of limitations period (the "Class" and/or the "Class Period").  Excluded from the Class are Park West, Park West's affiliates and each of their officers, directors and employees and  the officers, directors or employees of the Cruise Lines.

**Sub Class A (the "Royal Caribbean Class"):**

All persons residing in the United States, who purchased artwork and Appraisals at shipboard auctions conducted by Park West Galleries, Inc., PWG Florida, Inc., Vista Fine Art LLC d/b/a Park West at Sea and/or John Does 1-50 (together "Park West") on a ship owned or operated by Royal Caribbean Cruises Ltd. during the applicable statute of limitations period (the "Royal Caribbean Class" and/or the "Class Period").  Excluded from the Class are Park West, Park West's affiliates and each of their officers, directors and employees and officers, directors or employees of Royal Caribbean.

**Sub Class B (the "Holland America Class"):**

All persons residing in the United States, who purchased artwork and Appraisals at shipboard auctions conducted by Park West Galleries, Inc., PWG Florida, Inc., Vista Fine Art LLC d/b/a Park West at Sea and/or John Does 1-50 (together "Park West") on a ship owned or operated by the Holland America N.V. ("Holland America") during the applicable statute of limitations period (the ("Holland America "Class" and/or the "Class Period"). Excluded from the Class are Park West, Park West's affiliates and each of their officers, directors and employees and the officers, directors or employees of Holland America.

116.    Each Class or Sub-Class (hereafter together "Class") is sufficiently numerous to satisfy numerosity, with thousands of members having purchased artwork from Park West at shipboard auctions while on voyages of the Cruise Lines, Royal Caribbean or Holland America. The Class members are dispersed throughout the United States such that joinder of all members of the Class is impracticable. The Class members can be identified by records maintained by Defendants. Park West employs a Director of Shipboard Operations at its Southfield, Michigan headquarters who declared under penalty of perjury in the *Bouverat* litigation (cited above) that Park West prepares an "End of Cruise Report" for each cruise on which it conducts auctions, which records the trip history for each art auction held on board any cruise, as well as sales to Class Members during the cruise.

117.    Park West also maintains copies of all invoices and Appraisals for purchases at shipboard auctions that will identify members of the Class.

118.    The Cruise Lines, Royal Caribbean and Holland America maintain ship's manifests of all passengers that would identify members of the Class.

119.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class members are:

a.       whether Park West fraudulently misrepresented the artwork it sold to Plaintiff and the Class at shipboard auctions on the Cruise Lines as a "good investment";

b.       whether Park West fraudulently misrepresented the validity of the Appraisals sold to Plaintiff and the Class at shipboard auctions on the Cruise Lines;

c.       whether Park West concealed or omitted material information from Plaintiff and the Class regarding the artwork sold to Plaintiff and the Class or Appraisals sold at shipboard auctions on the Cruise Lines;

d.       whether Park West engaged in a systematic, deceptive uniform and continuing scheme to sell low value or forged artwork as valuable and a "good investment" at shipboard auctions on the Cruise Lines;

e.       whether Park West employed a uniform pattern of misrepresentation and omission in the sale of artwork on shipboard auctions on the Cruise Lines;

f.       whether Park West and Scaglione employed a uniform pattern of misrepresentation and omission in sale of the Appraisals and the Appraisals sold on shipboard auctions on the Cruise Lines;

g.       whether Royal Caribbean voluntarily, knowingly and intentionally conspired with Park West and Scaglione to facilitate or operate the fraudulent scheme alleged in the Complaint;

h.       whether Holland America voluntarily, knowingly and intentionally conspired with Park West and Scaglione to facilitate or operate the fraudulent scheme alleged in the Complaint;

i.    whether Royal Caribbean voluntarily, knowingly and intentionally conspired with Park West and Scaglione to violate RICO, 18 U.S.C. § 1962(c);

j.    whether Holland America voluntarily, knowingly and intentionally conspired with Park West and Scaglione to violate RICO, 18 U.S.C. § 1962(c);

k.    whether Royal Caribbean participated in the alleged conspiracy with Park West up to and including the present;

l.    whether Holland America participated in the alleged conspiracy with Park West, up to and including the present;

m.    whether the acts and omissions of Defendants as described in this Complaint violate RICO;

n.    whether Defendants are liable to Plaintiff and the Class for damages for conduct actionable under RICO;

o.    whether Defendants are "persons" as defined in RICO, 18 U.S.C. § 1961(3);

p.    whether the Art Auction Enterprises are each an association-in-fact enterprise pursuant to RICO, 18 U.S.C. § 1961(4);

q.    whether Park West engaged in a pattern of racketeering activity as defined in RICO, 18 U.S.C. § 1961(5);

r.    whether Park West, Scaglione, Royal Caribbean and Holland America (or any combination of them) conspired to engage in the pattern of racketeering activity as defined in RICO, 18 U.S.C. § 1961(5),  and as alleged above in this Complaint;

s.     whether Defendants used the mails and wires to further their fraudulent scheme and conspiracy as alleged in this Complaint;

t.     whether Defendants engaged in a conspiracy in violation of RICO, 18 U.S.C. § 1962(d);

u.     whether Defendants unjustly enriched themselves at the expense of the Plaintiff and the Class;

v.     whether the acts and omissions of Park West and Scaglione violated the various state laws as alleged below;

w.     whether Scaglione controls Park West;

x.     whether Scaglione and each of the Park West entities are alter egos;

y.     whether Plaintiff and the Class were injured and sustained damages and loss as a result of Defendants' illegal acts and omissions as alleged in this Complaint;

z.     the scope, extent and measure of damages and equitable relief that should be awarded to Plaintiff and the Class;

aa.     the amount of attorneys' fees, prejudgment interest, and costs of suit to which Plaintiff and the Class are entitled; and

bb.     whether the Defendants' acts and omissions were sufficiently wrongful to entitle Plaintiff and the Class members to punitive damages.

120.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the Class sustained damages arising out of the Defendants' wrongful conduct as detailed in this Complaint.  Specifically, Plaintiff's claims and the Class' claims arise from Defendants' illegal scheme and pattern of racketeering activity as alleged in this Complaint.

121.    Plaintiff will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action lawsuits.  Plaintiff has no interests antagonistic to or in conflict with those of the Class and therefore should be adequate as representatives for the Class.

122.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual members of the Class may in some instances be relatively small, the expense and burden of individual litigation would make it impossible for such Class members to individually redress the wrongs done to them.  Also, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the claims asserted herein.  There will be no difficulty in the management of this action as a class action.

## COUNT I

## VIOLATION OF 18 U.S.C. § 1962(c)

123.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

124.    This Count I is brought against Park West and Scaglione.

125.    PWG, PWG FL, Vista and FASI and Scaglione are each a "person" within the meaning of RICO, 18 U.S.C. § 1961(3), who conducted the affairs of the Art Auction Enterprises through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), in that Park West and Scaglione intentionally employed a scheme or artifice to defraud Plaintiff and the Class using the mails or wires in furtherance of that scheme.

126.    The Art Auction Enterprises, in the manner described in this Complaint, engaged in and affected interstate commerce.

127.    Park West or Scaglione exerted sufficient control over the Art Auction Enterprises that they were able to direct and conduct the affairs of the Enterprise.

128.    Park West and Scaglione conducted and participated in the affairs of the Art Auction Enterprises through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud), as described in this Complaint.

129.    Park West's and Scaglione's use of the U.S. Mails and wires in furtherance of the fraud described in this Complaint, involved thousands of communications, including, but not limited to:

    a.    communications between Park West and Scaglione and each of the members of the Art Auction Enterprises to establish and maintain the Enterprises;

    b.    communications, including financial payments, by Park West or Scaglione to the Cruise Lines, Royal Caribbean and Holland America in furtherance of the activities of the Art Auction Enterprises, planning or discussing or relating to the scheduling and conducting of shipboard auctions on the Cruise Lines, Royal Caribbean and Holland America cruises;

    c.    communications between Park West, Scaglione and Plaintiff and the Class, including Park West and Scaglione mailing Appraisals to Plaintiff and the Class, and receiving payments from Plaintiff and the Class in the mail or through the wires;

    d.    communications establishing Park West credit card accounts via the mails and wires;

e.      communications encompassing thousands of substantially identical communications with Plaintiff and the Class (and credit card servicing companies) paying for tickets on the Cruise Lines or for the artwork or Appraisals;

f.      communications directly or indirectly via mail and wire, between the Cruise Lines, Royal Caribbean and Holland America and Plaintiff and the Class to reserve passage on cruises, to pay for and receive tickets for the cruise and to pay the ship's bill before disembarking from the cruise; and

g.      communications between each of the Park West entities or Park West and Scaglione in furtherance of the conspiracy alleged in this Complaint.

130.    In addition, Park West and Scaglione have communicated by U.S. Mail, telephone and facsimile or wire with various artists and the artists' sales representatives and others around the country in furtherance of their scheme alleged in this Complaint.

131.    Defendant Park West maintains a website through which it communicates and continues to communicate with Plaintiff and members of the Class, also using the website to fraudulently conceal its illegal behavior. *See* www.parkwestgallery.com.

132.    Plaintiff and the Class have been injured in their property by reason of the violations alleged in this Complaint in that Plaintiff and the Class paid millions of dollars in payments for artwork purchased from Park West and Appraisals signed by Scaglione (or at his direction) at shipboard auctions on the Cruise Lines, Royal Caribbean and Holland America that they would not have paid had Defendants not engaged in their pattern of racketeering activity.

133.    The injuries to Plaintiff and the Class were directly and proximately caused by Park West's and Scaglione's racketeering activity as described above.

48

134.    By virtue of these violations of RICO, 18 U.S.C. § 1962(c), Park West and Scaglione are liable to Plaintiff and the Class for three times the damages Plaintiff and the Class have sustained, plus the cost of this suit, including reasonable attorney's fees.

## COUNT II

## VIOLATION OF 18 U.S.C. § 1962(d)

135.    Plaintiff incorporates by reference all proceeding paragraphs as if fully set forth herein.

136.    This Count II is alleged against all Defendants.

137.    RICO, 18 U.S.C. § 1962(d), provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

138.    Defendants have violated RICO, 18 U.S.C. § 1962(d), by conspiring to violate RICO, 18 U.S.C. § 1962(c), as alleged in this Complaint.  The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of affairs of the Art Auction Enterprises through a pattern of racketeering activity.

139.    Defendants, as co-conspirators, have engaged in numerous overt acts in furtherance of the conspiracy as described in this Complaint, including multiple instances of mail and wire fraud violations, including but not limited to:

a.    knowingly agreeing to and scheduling the shipboard art auctions to take place in international waters;

b.    knowingly agreeing to and establishing a display area for the artwork for sale at a prominent venue of the ship;

c.      knowingly agreeing to schedule Park West to conduct art auctions on Royal Caribbean cruises for over ten (10) years;

d.      Royal Caribbean or Holland America's communication by mail and wire with Plaintiff and the Class to book tickets, establish travel itineraries and collect payments for tickets and for ship's bills; and

e.      collecting shared revenues.

140.   The nature of the above-described co-conspirators' acts in furtherance of the conspiracy gave rise to a plausible inference that each of the Defendants agreed to the objective of violating RICO, 18 U.S.C. § 1962(c), and that by conspiring to violate RICO, 18 U.S.C. § 1962(c), they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

141.   Plaintiff and the Class have been injured in their property by reason of the conspiracy alleged herein in that Plaintiff and the Class have paid Park West millions of dollars for artwork purchased at shipboard auctions on cruises in the operation of the Art Auction Enterprises that Plaintiff and the Class would not have paid had Defendants not conspired to violate RICO, 18 U.S.C. § 1962(c).

142.   The injuries of Plaintiff and the Class were directly and proximately caused by the conspiracy to violate RICO, 18 U.S.C. § 1962(c), as described above.

143.   By virtue of these violations of RICO, 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff and the Class for three times the damages Plaintiff and the Class have sustained, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT III

## VIOLATION OF 18 U.S.C. § 1962(a)

144.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

145.    This Count III is alleged against Albert Scaglione.

146.    Park West Galleries, Inc. ("PWG") is a private corporation with Albert Scaglione as its principal shareholder and manager of its day to day operations.   Scaglione controls PWG.

147.    Scaglione is the sole member of Vista Art LLC d/b/a Park West at Sea, which with Park West sells artwork on the Cruise Lines and Royal Caribbean and  Holland America cruises.

148.    Scaglione receives income from the pattern of racketeering described in this Complaint.

149.    Scaglione used the income from the pattern of racketeering activity alleged in this Complaint to invest in the operation of the Art Auction Enterprises.  For example, Scaglione invested the income to build, launch and maintain a Salvatore Dali website, launched in 2009, in conjunction with Park West's website, to promote Park West's sale of Dali's works at shipboard auctions in and to further the goals of the Art Auction Enterprises.

150.    The Art Auction Enterprises each affect interstate commerce as alleged in this Complaint.

151.    By virtue of these violations of RICO, 18 U.S.C. § 1962(a), Plaintiff and the Class were injured in their property by Scaglione's use and investment of racketeering income, and

Scaglione is liable to Plaintiff and the Class for three times the damages Plaintiff and the Class have sustained, plus costs of this suit and reasonable attorneys' fees.

## COUNT IV

## VIOLATION OF 18 U.S.C. § 1962(b)

152.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

153.    This Count IV is alleged against Albert Scaglione.

154.    Scaglione is the principal and largest shareholder of PWG and sole member of Vista Art LLC d/b/a Park West at Sea which sells artwork on the Cruise Lines and Royal Caribbean and Holland America cruises.

155.    Scaglione receives income from the pattern of racketeering described in this Complaint.

156.    Scaglione used or invested the income from the pattern of racketeering activity to invest in and maintain the Art Auction Enterprises.

157.    Scaglione invested the income to maintain the Art Auction Enterprises and to build, launch and maintain a Salvatore Dali website in 2009 to promote Park West's prominence in the sale of Dali's works at auctions on Royal Caribbean and Holland America cruises in furtherance of the goals of the Art Auction Enterprises.

158.    The Art Auction Enterprises each affects interstate commerce.

159.    By virtue of these violations of RICO, 18 U.S.C. § 1962(b), Plaintiff and the Class were injured in their property, and Scaglione is liable to Plaintiff and the Class for three

times the damages that Plaintiff and the Class have sustained, plus costs of this suit and reasonable attorneys' fees.

## COUNT V

## VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES

160.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

161.    This Count V is alleged against Park West.

162.    For purposes of this Count V only, the Class and each of he sub-Classes is limited to citizens of California, Florida, Illinois, Massachusetts, Michigan, New York and Pennsylvania.

163.    Park West engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the state consumer protection statutes listed below when they employed deceptive sales tactics described herein.  As a direct result of Park West's deceptive, unfair and unconscionable conduct, Plaintiff and the Class were injured in that they paid millions of dollars for artwork purchased at shipboard auctions on Royal Caribbean and Holland America cruise ships that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

164.    Park West has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

165.    Park West has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. Ann. § 501.201, *et seq.*

166.     Park West has engaged in unfair competition or unfair or deceptive acts or practices in violation of Illinois Fraud and Deceptive Bus. Prac. Act, § 815 ILCS 505/1, *et seq.*

167.     Park West has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. Laws Ch. 93A, *et seq.*

168.     Park West has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws § 445.901, *et seq.*

169.     Park West has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

170.     Park West has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Cons. Stat. § 201-1, *et seq.*

171.     The unfair and deceptive acts and practices of Park West has directly, foreseeably and proximately caused damages and injury to Plaintiff and the members of the Class.

172.     The actions and failure to act by Park West, including the false and misleading representations and omissions of material facts regarding the value of the artwork and Appraisals purchased at shipboard art auctions on the Cruise Lines, Royal Caribbean and Holland America and the above described course of deceptive conduct and fraudulent concealment, constitute acts, uses, or employment by Park West of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission of material facts in connection with the sale of artwork at shipboard auctions on the cruises.

173.     Plaintiff and the Class are not sophisticated purchasers of art and relied upon Park West's misrepresentations and omissions in purchasing artwork and Appraisals at shipboard

auctions on the recreational cruises. Plaintiff and the Class relied upon Park West's misrepresentations and omissions in paying for the artwork and Appraisals. By reason of the unlawful acts engaged in by Park West, Plaintiff and the Class have suffered ascertainable loss and damages. As a direct and proximate result of this wrongful conduct, Plaintiff and the Class were damaged by paying for these artwork.

174.    As a direct and proximate result of Park West's wrongful conduct, Plaintiff and members of the Class were injured and are entitled to compensatory damages, treble damages, attorneys' fees and costs of suit.

## COUNT VI

## VIOLATIONS OF STATE FINE ART STATUTES

175.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

176.    This Count VI is alleged against Park West and John Does 1-50 (together "Park West").

177.    For the purposes of this Count VI only, the Class and each sub-Class is limited to citizens of Michigan, Florida, and New York.

178.    Plaintiff and the Class bid on and purchased artwork at shipboard art auctions held on the Cruise Lines, Royal Caribbean and Holland America based on the descriptions and representations made by Park West as to the authorship, authenticity, genuineness and value of the artwork. Park West made statements with respect to the authorship, authenticity, genuineness and value of the artwork both verbally and in writing, and Plaintiff received an Invoice, Certificate of Authenticity and/or an Appraisal setting forth Park West's representations.

179.    Park West's statements regarding the authorship, authenticity, genuineness and/or value of the artwork purchased by Plaintiff and the Class created an express warranty as to the accuracy of those statements by virtue of the statutes listed below.  Park West intentionally and deliberately made misleading statements to Plaintiff and the Class that the artwork they purchased was of a particular authorship, authenticity, genuineness and/or value, when Park West knew or should have known that the descriptions of the artwork provided to Plaintiff and the Class were not accurate and/or were misleading.

180.    Park West made intentionally misleading and/or false statements to Plaintiff and the Class in their description of the artwork Plaintiff and the Class purchased in violation of Fla. Stat. § 686.501, *et seq.*

181.    Park West made intentionally misleading and/or false statements to Plaintiff and the Class in their description of the artwork Plaintiff and the Class purchased in violation of Mich. Comp. Laws § 442.321, *et seq.*

182.    Park West made intentionally misleading and/or false statements to Plaintiff and the Class in their description of the artwork Plaintiff and the Class purchased in violation of Mich. Comp. Laws § 442.351, *et seq.*

183.    Park West made intentionally misleading and/or false statements to Plaintiff and the Class in their description of the artwork Plaintiff and the Class purchased in violation of N.Y. C.L.S. Art & Cult. Affr. § 13.01, *et seq.*

184.    The authorship, authenticity, genuineness and value of the artwork purchased by Plaintiff and the Class are characteristics that are essential to the identity of the goods sold.

185.    Park West intentionally and in bad faith misrepresented the authorship, authenticity, genuineness and/or value of the artwork purchased by Plaintiff and the Class.

186.    Plaintiff and the Class are not sophisticated purchasers of art and relied upon Park West's misrepresentations and omissions in purchasing artwork and Appraisals at shipboard auctions on the Cruise Lines, Royal Caribbean and Holland America cruises.  Plaintiff and the Class relied upon Park West's misrepresentations and omissions in paying for the artwork and Appraisals.

187.    Park West failed to deliver artwork to Plaintiff and the Class that conformed to its own description of such goods.

188.    As a direct and proximate result of the foregoing, Plaintiff and the Class were damaged in an amount to be determined at trial.

**COUNT VII**

**BREACH OF CONTRACT**

189.    Plaintiff incorporates by reference all proceeding paragraphs as if fully set out herein, except Counts V (state consumer protection laws) and VI (state fine art statutes).

190.    Plaintiff brings this Count in the *alternative* to Counts V and VI.

191.    This Count VII is brought against Park West.

192.    The Certificate of Authenticity issued to Plaintiff and the Class and furnished by Park West with the artwork purchased at shipboard auctions constitutes a valid and enforceable contract with Park West.  *See* Exhibit E, Sample Certificate of Authenticity.

57

193.    A material term of the contract between Park West and Plaintiff and the Class was the guarantee of authenticity of the artwork sold at shipboard auctions on Royal Caribbean or Holland America cruises.

194.    Plaintiff and the Class performed all of their duties and responsibilities under the contract.

195.    Notwithstanding the covenants and promises contained in that contract, specifically the guarantee of authorship described in the Certificate of Authenticity furnished by Park West, Park West failed to deliver the genuine works described therein to Plaintiff and the Class.

196.    As a direct and proximate result of the foregoing, Plaintiff and other members of the Class have been injured and damaged in an amount to be determined at trial.

## COUNT VIII

## BREACH OF WARRANTY

197.    Plaintiff incorporate by reference all proceeding paragraphs as if fully set out herein, except Counts V (state consumer protection statutes) and VI (state fine art statutes).

198.    This Count VIII is brought against Park West as an *alternative* to Counts V and VI.

199.    The statements of Park West regarding the authenticity, genuineness and value of the artwork in the Appraisals purchased by Plaintiff and the Class constitute an express warranty.

200.    The authorship, authenticity, genuineness and value of the artwork purchased by Plaintiff and the Class are characteristics that are essential to the identity of the goods sold.

201.    Park West failed to deliver artwork to Plaintiff and the Class that conformed to its own description of such goods.

202.    As a direct and proximate result of the foregoing, Plaintiff and the Class were damaged in an amount to be determined at trial.

## COUNT IX

## UNJUST ENRICHMENT

203.    Plaintiff incorporate by reference all proceeding paragraphs as if fully set forth herein except Counts VII (breach of contract and VIII (breach of warranty).

204.    This Count IX is brought against all Defendants as an *alternative* to Counts VII and VIII.

205.    As the intended and expected result of Defendants' conscious wrongdoing as set forth in this Complaint, Defendants profited and benefitted from payments Plaintiff and the Class made to them for artwork and Appraisals purchased at shipboard auctions on Royal Caribbean.

206.    Defendants voluntarily accepted and shared these payments with full knowledge and awareness that, as a result of their wrongdoing, Plaintiff and the Class paid for artwork when they otherwise would not have done so.

207.    An inequity resulted to Plaintiff and the Class because Defendants kept the benefit and were unjustly enriched.

208.    Plaintiff and the Class are entitled in equity to seek restitution of Defendants' wrongful profits, revenues and benefits to the extent, and in the amount, deemed appropriate by the Court and such other relief as the Court deems just and proper.

## COUNT X

## CIVIL CONSPIRACY

209.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

210.    This Count X is alleged against all Defendants.

211.    Defendants engaged in concerted action to accomplish the fraud described in this Complaint.

212.    Defendants' overt acts as detailed in the Complaint result in the plausible inference that Defendants intentionally agreed to defraud Plaintiff and the Class.

213.    As a direct and proximate result of this wrongful conspiracy Plaintiff and the Class suffered ascertainable injury and were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand judgment against Defendants in each claim for relief, jointly and severally, as follows:

a.    declaring that this action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, establishing an appropriate class, appointing Plaintiff as the Class Representative, and appointing the undersigned counsel of record as Class Counsel;

b.    requiring Defendants to refund and make restitution of all monies acquired from the sale of artwork at shipboard auctions on Royal Caribbean or Holland America Cruises to Plaintiff and the Class;

c.    awarding damages on the RICO claims;

d.      awarding damages from Park West on the claims under the consumer protection statutes of the various states, as enumerated above, respecting the compensatory damages Plaintiff and the Class have sustained as a result of Park West's conduct, and punitive damages, such amounts to be determined at trial, plus Plaintiff' costs in this suit, including reasonable attorneys' fees;

e.      awarding damages on the claims for breach of contract and breach of warranty as enumerated above against Park West;

f.      awarding recovery on Plaintiff's and the Class's claim for unjust enrichment against all Defendants, in the amount of payments for artwork purchased at shipboard auctions on Royal Caribbean or Holland America cruises in such amount to be determined at trial, plus Plaintiff' costs in this suit, including all reasonable attorneys' fees;

g.      awarding Plaintiff and the Class statutory damages as permitted, including any applicable exemplary damages;

h.      awarding Plaintiff and the Class prejudgment interest;

i.      awarding Plaintiff and the Class restitution and/or disgorgement and other equitable or injunctive relief as the Court deems appropriate;

j.      awarding Plaintiff and the Class costs and expenses in this litigation, including, but not limited to, expert fees and reasonable attorneys' fees; and

k.      awarding Plaintiff and the Class such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury on all issues so triable.

Dated:         July 24, 2009

/s/ E. Powell Miller
E. Powell Miller (P39487)
Marc L. Newman (P51393)
THE MILLER LAW FIRM, P.C.
950 West University Drive
Suite 300
Rochester, Michigan  48307
(248) 841-2200
epm@millerlawfirmpc.com

Steven A. Schwartz (Pa. I.D. 50579)
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, Pennsylvania  19041
(610) 642-8500
steveschwartz@chimicles.com

Of Counsel:

Denise Davis Schwartzman (Pa. I.D. 40659)
Kimberly A. Sanders (PA. I.D. 206431)
Chimicles & Tikellis LLP
361 W. Lancaster Avenue
Haverford, PA  19041
(610) 642-8500