UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
In re:  PARK WEST GALLERIES, INC.,      )   MDL No. 09-2076RSL
MARKETING AND SALES PRACTICES           )
LITIGATION                              )
_____ )
                                        )   ORDER GRANTING
THIS DOCUMENT RELATES TO:               )   PARK WEST'S MOTION TO
                                        )   DISMISS FIRST AMENDED
Mullen v. Park West Galleries, Inc.,    )   COMPLAINT
Case No. C09-1717RSL.                   )
_____ )

This matter comes before the Court on "Park West's Motion Dismiss Plaintiffs' [sic] First Amended Complaint" in <u>Mullen v. Park West Galleries, Inc.</u> MDL09-2076, Dkt. # 99; C09-1717RSL, Dkt. # 33. Defendants Park West Galleries, Inc., PWG Florida, Inc., Fine Art Sales, Inc., and Vista Fine Art, LLC (together, "Park West") seek dismissal of all of the claims asserted against them. Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the argument of counsel, the Court finds as follows:

**A. MATTERS OUTSIDE THE PLEADINGS**

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's review is generally limited to the contents of the complaint. <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir. 1996). The Court may, however, consider documents referenced extensively in the complaint, documents that form the basis of plaintiff's claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted. <u>United States v. Ritchie</u>, 342 F.3d 903, 908-09 (9th Cir. 2003). The

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT

documents attached to plaintiff's complaint, including the invoice and appraisals produced by Park West, fall into at least one of these categories. The Court has, therefore, considered the documents attached to the complaint when determining whether the allegations, taken as true and construed in the light most favorable to plaintiff, give rise to a plausible inference of actionable conduct. See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

**B. CONTRACTUAL SUIT LIMITATION PROVISION**

Plaintiff alleges that he received an invoice that was materially identical to the one attached to his complaint as Exhibit A. First Amended Complaint ("FAC") ¶ 135(j). The invoices were provided (and presumably signed) by plaintiff "at the time of purchase" in international waters. Id. Although not apparent from the copy attached to the FAC, the invoice has two sides. On the front is transactional information, followed by a nine-line statement wherein plaintiff acknowledged that the purchase of the identified artwork is subject to the terms and conditions set forth in the invoice. Directly above the signature line is the statement, "This invoice contains additional terms and conditions on the reverse side. Those terms and conditions are important and purchaser should read them carefully." The back of the invoice contains approximately thirty terms and conditions, one of which states, "With the sole exception of claims under section 3 of Terms of Guarantee described above, any lawsuit by purchaser asserting any claim whatever relating to artwork purchases shall not be maintainable unless filed within nine months after the invoice date shown on the purchasers' invoice." Plaintiff has not argued that the exception to the limitation provision applies.

**1. Unconscionability**

Plaintiff argues that the suit limitation provision is unenforceable because it is both procedurally and substantively unconscionable. Different forums have different rules regarding the validity and enforceability of contracts, especially where unconscionability is the issue. The

parties agree that Washington's choice of law analysis applies, such that the forum with the most significant relationship to the transaction and the parties should supply the governing law. In order to make this determination, the Court considers:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188(2). All of these factors favor jurisdictions other than Washington: the contract was negotiated and signed at sea, the artwork is presumably located in the District of Columbia, and the locations of the parties and/or place of performance include the District of Columbia and Michigan. Washington has no ties to the agreement or the parties, and its interests do not justify the imposition of Washington law under Restatement (Second) of Conflict of Laws § 6. The Court therefore concludes that, in the absence of a contractual choice of law provision, federal common law as set forth in the Restatement (Second) of Contracts governs the validity and enforceability of the invoices.

"If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contact without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." Restatement (Second) of Contracts § 208. The issue is whether, when evaluated in light of its setting, purpose, and effect, the contract drives too hard a bargain such that one party is in danger of oppression and unfair surprise. Id., comments a and b. A contract is not unconscionable "merely because the parties to it are unequal in bargaining position:" courts should not disturb a voluntary allocation of risks simply because one party has the power to insist on its own way. Id., comments b and d. See also Gilmer v. Interstate/ Johnson Lane

Corp., 500 U.S. 20, 33 (1991) (courts regularly uphold agreements between parties with unequal bargaining power: such inequality, standing alone, is not sufficient to invalidate a contract). If, however, a gross inequality of bargaining power results in contract terms that unreasonably favor the stronger party, the court may deny effect to the offending term or the contract as a whole. Restatement (Second) of Contracts § 208, comment d. See also Alexander v. Anthony Int'l, LP, 341 F.3d 256, 265 (3d Cir. 2003); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).

        a. Procedural Unconscionability

        Plaintiff argues that because the invoices were presented to plaintiff after he was "committed to purchase" the artwork, the entire contract is procedurally unconscionable. No cases are cited in support of this proposition. Many transactions involve some sort of preliminary agreement regarding basic terms, with the details hashed out later. Under the common law, additional terms may be proposed and accepted into the contract as long as the circumstances are "sufficient to show agreement . . . even though the moment of its making is undetermined." Puget Sound Fin., LLC v. Unisearch, Inc., 146 Wn.2d 428, 437 (2002).

        The invoices at issue are the only writing evincing the sale of artwork to plaintiff. When the auctioneer brought the hammer down, the only known terms were the parties, the goods sold, and the price. The nuts and bolts of the transaction, including unsurprising terms such as refund policies, taxes and fees, delivery options, integration clauses, and warranties, were presented to plaintiff within a reasonable time of the auction. There is no indication that plaintiff was under any undue stress or was otherwise impaired at the time. The invoice was legible, uncomplicated, relatively short, and written in plain English. Although the suit limitation provision was one of thirty terms included on the second page, plaintiff was notified via a warning immediately above the signature line that there were additional terms on the back side and that he should read them carefully. There is no indication that, had plaintiff taken the time to read the invoice, he would have been unable to understand its provisions. Plaintiff had

the opportunity to review the two-page document and was free to reject the additional terms, thereby reopening negotiations or walking away from the deal. Instead, plaintiff chose to sign the contract and accept the offered terms. No procedural unconscionability exists.

        b. Substantive Unconscionability

Plaintiff argues that the nine-month suit limitation provision is substantively unconscionable because (I) he did not receive the artwork and/or appraisals until one or two months after their cruise ended and (ii) he had no reason to suspect injury until after the nine-month period had run. A provision limiting the time in which to bring a claim is not necessarily unfair as long as the contractual period is reasonable. Order of United Commercial Travelers v. Wolfe, 331 U.S. 586, 608 (1947). Even if the Court assumes that there were a two month delay between the auction and plaintiff's receipt of their artwork/appraisals, plaintiff had seven additional months to determine whether a cause of action existed. Given the nature of the transaction, this period allowed for the orderly inspection and evaluation of the product and was reasonable.

**2. Discovery Rule**

Plaintiff offers no case law in support of their argument that the Court should superimpose the discovery rule on the unambiguous limitations period contained in the invoice. Even if the discovery rule applies, it would not save plaintiff's claims. He acknowledges that the alleged fraud was disclosed in a July 16, 2008, New York Times article, and yet he did not file suit until more than nine months later.

**3. Equitable Tolling**

The discovery rule delays the start of the limitations period until plaintiff knows or should have known of his injury. Equitable tolling, on the other hand, serves to extend the limitations period once the injury is apparent if plaintiff, acting with due diligence, "cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." Garcia v. Brockway, 526 F.3d 456, 465 (9th Cir. 2008) (quoting

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT    -5-

Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990) (J. Posner)).  Plaintiff has neither asserted facts that trigger equitable tolling nor provided authority for its imposition in a contractual setting.

### 4. Equitable Estoppel

The Court will assume for purposes of this motion that a defendant can be equitably estopped from raising a contractual limitation provision as a defense if it takes actions or makes representations that prevent plaintiff from filing suit within the limitations period.  The primary focus of the equitable estoppel analysis is defendant's conduct/ misrepresentations and whether plaintiff reasonably relied on them to his detriment.  See Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1121 (9th Cir. 2006).

Plaintiff argues that defendants took steps to conceal the alleged scheme to sell overpriced artwork by failing to reveal the scheme and/or the true value of the artwork sold.  FAC ¶ 141-146.  Plaintiff has not, however, alleged that he sought information from defendants and was rebuffed or that defendants took extraordinary steps to make information unavailable.  In essence, plaintiff argues that the same conduct that gave rise to his causes of action (selling overpriced artwork on cruise ships without revealing actual valuation) also supports equitable estoppel.  A plaintiff must, however, point to "some active conduct by the defendant above and beyond the wrongdoing upon which the plaintiff's claim is based" in order to trigger equitable estoppel.  Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1052 (9th Cir. 2008), cert. denied, __ U.S. __, 129 S. Ct. 1997 (2009).  For example, if defendants had stated that they would not assert the statute of limitation as a defense or had promised to reimburse plaintiff's losses only to renege the day after the limitations period expired, they might be equitably estopped.

In the circumstances presented here, plaintiff would have the Court find defendants guilty of fraudulent concealment merely because they did not tell plaintiff that they had sold him overpriced art.  Such an argument merges the substantive wrong with the estoppel

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT       -6-

doctrine, effectively eliminating the limitations period. Id. (quoting Cada, 920 F.2d at 451). In the absence of a misrepresentation or conduct by defendants aimed at concealing the underlying tort alleged in the FAC or otherwise preventing plaintiff from timely asserting his rights, equitable estoppel is not applicable.

### 5. Voidable Contract

Plaintiff argues that, because he agreed to purchase artwork (and signed the related invoices) in reliance on Park West's fraudulent representations, the invoices are invalid. Dkt. # 117 at 18.[1] Pursuant to the Restatement (Second) of Contracts § 164, "[i]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." A contracting party is generally not permitted to rely on another's statement of opinion regarding quality or value. Restatement (Second) of Contracts § 168, comments b and c, and § 169. It must be assumed that a seller will speak favorably of what he has to sell. "When he praises it in general terms, commonly known as 'puffing' or 'sales talk,' without specific content or reference to facts, buyers are expected to understand that they are not entitled to rely." Restatement (Second) of Contracts § 169, comment b. This rule gives way, however, if the buyer "reasonably believes that, as compared with himself, the person whose opinion is asserted has special skill, judgment or objectivity with respect to the subject matter." Restatement (Second) of Contracts § 169(b).

Plaintiff alleges that he is not a sophisticated purchaser of art and that Park West, by contrast, is a large and knowledgeable art dealer. Plaintiff alleges that he relied on the following statements made by Park West employees:

- the works purchased by plaintiff were a "good investment" and
- the works would appraise for "many times" the price paid at auction.

---

[1] Although this argument was asserted as a defense to the integration clause found in the invoice (Opposition at 18), it applies equally to the contractual suit limitation provision.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT     -7-

FAC ¶ 135(g).[2] Even if these representations were statements of opinion that plaintiff should reasonably have discounted as "puffery," plaintiff would still be entitled to assume that the statements were "not so far removed from the truth as to be incompatible with the facts known to" Park West. Restatement (Second) of Contracts § 168, comment d. Especially in light of plaintiff's reasonable belief that Park West had special skill and judgment with respect to the value of the artwork, they could reasonably infer "that there are facts that justify [Park West's] opinion, or at least that there are not facts that are incompatible with it." Id.[3]

Plaintiff alleges that Park West grossly misrepresented the value of the artwork it sold, playing on plaintiff's relative lack of information and sophistication to convince him that the pieces were good investments and likely to appraise for many times the sale price. A contract induced by a fraudulent or material misrepresentation is voidable by plaintiff. Restatement (Second) of Contracts § 164(1). Plaintiff has not, however, sought to invalidate the sales contracts. Because the contracts remain in effect, plaintiff's claims are untimely and must be dismissed.[4]

## C. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")

### 1. Adequacy of Pleading

Plaintiff allege that defendants have violated 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

---

[2] Plaintiff also alleges that Park West misrepresented the provenance of the artwork they purchased. FAC ¶ 210.

[3] See Restatement (Second) of Contracts § 169, illustration 2 ("A, the proprietor of a dance studio, seeking to induce B, a 60-year-old widow with no background in dancing, to make a contract for dance lessons, tells B that she has 'dance potential' and would develop into a 'beautiful dancer.' A knows that B has little aptitude as a dancer. B is induced by A's statement of opinion to make the proposed contract. B's reliance on A's statement of opinion is justified, and the contract is voidable by B.").

[4] Because it seems likely that plaintiff will move to amend his complaint to seek invalidation of the contract, the Court will consider defendants' other arguments on their merits.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT      -8-

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Park West argues that plaintiff has failed to identify with the particularity required by Fed. R. Civ. P. 9(b) the existence of an enterprise and a pattern of racketeering activity. For the most part, defendants misconstrue the reach of Rule 9(b) in this context and ignore the allegations of the complaint.

      a. Allegations of "Enterprise"

The statutory definition of "enterprise" is "not very demanding." Odom v. Microsoft Corp., 486 F.3d 541, 548 (9th Cir. 2007). An enterprise "is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). The enterprise need not have any particular organizational structure separate from its members or beyond that which is necessary to carry out its chosen course of conduct: it simply must function as an on-going, continuing unit. Odom, 486 F.3d at 551-52. This element of a RICO claim does not sound in fraud and need not be pled with particularity. Plaintiff alleges that Park West and the cruise lines participated in an on-going association designed to funnel cruise line passengers to Park West's auctions for the purpose of selling worthless or overvalued artwork and thereby increasing the profits of the association's members. When asked to review the sufficiency of similar allegations in Odom, the Ninth Circuit applied the pleading standards of Fed. R. Civ. P. 8 and found that the allegations were "more than adequate." Odom, 486 F.3d at 552. Even when evaluated through the lens of Twombly, the allegations related to an "enterprise" are sufficient.

      b. Allegations of "Racketeering Activity"

The racketeering activity alleged in the complaint consists of mail and wire fraud in violation of 18 U.S.C. § 1341 and § 1343. Mail or wire fraud involves three elements: (1) the formation of a scheme to defraud, (2) the use of the United States mails or wires in furtherance of the scheme, and (3) defendants' specific intent to deceive or defraud. United States v.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT        -9-

McNeil, 320 F.3d 1034, 1040 (9th Cir. 2003).  Most of the elements, such as the existence of an agreement and defendant's state of mind, may be pled with general, rather than particularized, allegations.  "The only aspects of [mail or] wire fraud that require particularized allegations are the factual circumstances of the fraud itself."  Odom, 486 F.3d at 554.  Although plaintiff is not able to provide the names of the individual Park West auctioneers who allegedly misrepresented the value of the artwork sold, he does identify the time, place, and specific content of the offending statements, as well as the relationship of the speaker(s) to defendants.[5]  These allegations provide a factual basis for the averment of fraud and are sufficient to allow Park West to prepare an answer.  To the extent Rule 9(b) applies to plaintiff's allegations of wire and mail fraud related to the value of the artwork, they have satisfied the heightened pleading requirements.

        c. Allegations of Causation and Reliance

Defendants also challenge the adequacy of plaintiff's allegations regarding causation and reliance.  Plaintiff alleges that he would not have bid on or purchased artwork from Park West had it not misrepresented its investment and appraisal value.  FAC ¶ 137.  Even if one assumes that this straightforward allegation regarding plaintiff's state of mind is somehow insufficient, the underlying factual allegations regarding the parties' relative experience and Park West's statements regarding value raise an inference of reliance that supports the causation allegation.

**2. 18 U.S.C. § 1962(d)**

Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(a), (b), or (c) of RICO.  Although the agreement to violate RICO need not be express, the factual allegations of the complaint, including the words, actions, and relationship between the parties, must raise an inference that an agreement exists.  Oki Semiconductor Co. v. Wells Fargo Bank,

---

[5] As discussed below in Section E.2., plaintiff has not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork he purchased.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT       -10-

298 F.3d 768, 773, 774-75 (9th Cir. 2002). Once an agreement is demonstrated, all conspirators, whether or not they individually violated RICO, are jointly and severally liable for the acts of their co-conspirators. Id. at 775. See also U.S. v. Fiander, 547 F.3d 1036, 1041 (9th Cir. 2008) (evidence that defendant knew about and agreed to facilitate a violation of RICO supports a finding of conspiracy, even if defendant did not commit the substantive offense). Plaintiff alleges that Park West and the cruise lines had a long-standing relationship, that their employees worked together to conduct almost every facet of the auctions, that they were aware of the efforts each made to attract passengers to the auction and to sell artwork, and that the cruise lines had a direct financial interest in every sale made on their ships. These allegations raise a plausible inference of an agreement. See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1056 (9th Cir. 2008) (inference of specific intent raised by allegations of knowledge, participation in certain activities, and profit motive).

### D. ADMIRALTY JURISDICTION AND STATE STATUTES

Defendants argue that the Michigan Fine Art Sales Act, Mich. Comp. Laws § 442.321 *et seq*., and the Michigan Art Multiple Sales Act, Mich. Comp. Laws § 442.351 *et seq*., do not apply to sales conducted in international waters. Plaintiff makes no attempt to address the Court's earlier determination that his claims against Park West satisfy both the location and connection tests set forth in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531-34 (1995), and are therefore cognizable in admiralty. Because the damage provisions of the Michigan Art Multiple Sales Act allow for the recovery of attorney's fees (Mich. Comp. Laws § 442.365(b)), it conflicts with established admiralty law and is preempted. See F.W.F., Inc. v. Detroit Diesel Corp., 494 F. Supp.2d 1342, 1352-53 (S.D. Fla. 2007); DeRossi v. Nat'l Loss Mgmt., 328 F. Supp.2d 283, 288-89 (D. Conn. 2004). Defendants have not, however, shown that the Michigan Fine Art Sales Act conflicts with the law of admiralty.

Park West further argues that plaintiff's allegations related to the Michigan Fine

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT     -11-

Art Sales Act are so conclusory and vague that it is unable to prepare a response to the claim. The statute establishes circumstances in which a warranty of the authenticity of authorship arises. Plaintiff has not alleged any statements, whether oral or written, that Park West made regarding the authorship of the works purchased from Park West. Nor has he alleged that the artists mentioned in the complaint did not, in fact, author the works plaintiff purchased. Plaintiff's claim under the Michigan Fine Sales Act appears to be based on plaintiff's general allegations regarding Park West's business practices and conduct toward other customers. Defendants are justifiably confused about the nature of Mr. Mullen's claim under the statute.

Count II fails as a matter of law.

### E. ADMIRALTY – COMMON LAW FRAUD

Defendants argue that plaintiff's fraud claim fails because: (1) it is barred by the merger clause in the invoices plaintiff signed; (2) it is not alleged with the particularity required by Rule 9(b); and (3) plaintiff has alleged only "puffery," which is not actionable.

**1. Contractual Merger Clause**

The front of the invoices contains the following term in capital letters: "No verbal agreements or representations shall be of any force or effect unless set forth in writing in this invoice." A similar term is included on the back of the invoices. For the reasons discussed above in Section B.5., the invoices, including the merger provision, are voidable by the recipients. Plaintiff has not, however, sought to invalidate the sales contracts. Because the merger provisions remain in effect, plaintiff cannot establish that he reasonably relied on prior representations that were expressly voided by the very contract plaintiff signed.[6]

---

[6] Plaintiff argues that, because Park West breached a provision of the invoices first, it cannot enforce the remainder of the contract. Plaintiff has not alleged a breach of contract claim against Park West, has not shown that the alleged defects in the appraisals rendered further performance by plaintiff ineffective or impossible (Tocco v. Tocco, 409 F. Supp.2d 816, 829 (E.D. Mich. 2009)), and has not identified a governing rule of federal common law.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT      -12-

### 2. Adequacy of Pleading under Rule 9(b)

Plaintiff alleges that he relied on the following statements made by Park West employees leading up to or during the on-board auctions:

- the works purchased by plaintiff were a "good investment" and
- the works would appraise for "many times" the price paid at auction.

FAC ¶ 135(g). To the extent plaintiff's fraud claim is based on these allegations, it satisfies the heightened pleading standard of Rule 9(b).

Count III of the complaint also mentions misrepresentations regarding the provenance and authenticity of the purchased works. There are no factual allegations in support of these asserted misrepresentations. It is not clear what, if anything, was said on these subjects, who said it, when they said it, or whether plaintiff relied thereon. Mr. Mullen does not allege that he was told anything about the provenance or authorship of the works purchased, and he may not hold Park West liable for statements that may or may not have been made to other customers. Plaintiff's allegations center on overstatements of investment and appraisal value, not a lack of authenticity or the mis-identification of the author. Because the allegations of the complaint do not provide Park West with sufficient information to defend a fraud claim arising out of undisclosed statements regarding provenance or authorship, that part of the fraud claim is dismissed.

### 3. Non-Actionable "Puffery"

As discussed above in Section B.5., plaintiff's reliance on Park West's statements regarding investment and appraisal values may be justified. Plaintiff could reasonably believe that, as compared with himself, Park West has special skill and judgment with respect to the subject matter of the statements. Restatement (Second) of Contracts § 169(b). At the very least, plaintiff had a right to expect that Park West's statements of value were "not so far removed from the truth as to be incompatible with the facts known to" Park West. Restatement (Second)

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT      -13-

of Contracts § 168, comment d.[7]

### F. CIVIL CONSPIRACY

Plaintiff alleges that the relationship between defendants and their actions in furtherance of the fraudulent sales give rise to a plausible inference that there was an agreement or conspiracy to defraud plaintiff. For purposes of the civil conspiracy claim, the underlying fraud – Park West's misrepresentations regarding the investment and appraisal value of the artwork sold – is adequately plead under Rule 9(b). The other elements of the conspiracy claim, including the existence of an agreement, can be alleged generally, and plaintiff has alleged facts from which one could infer the existence of an agreement.[8]

### G. UNJUST ENRICHMENT

Generally, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604 (1943). See also Bouverat v. Park West Gallery, Inc., C08-21331-Jordan (S.D. Fla. Dec. 22, 2008). Because plaintiff has not sought to void the invoices, they govern the relationship between the parties. Plaintiff's equitable claim of unjust enrichment against Park West therefore fails as a matter of law.

---

[7] Defendants' argument that their statements were merely predictions of future events is not persuasive. Defendants' statements are definite and provide information regarding the investment or appraisal value of the artwork at the time of the statement. In addition, the statements imply a number of subsidiary facts, such as that Park West had a particular state of mind concerning the subject (*i.e.*, it believed what its employees said), that Park West was certain enough to make a definitive statement regarding present value, and that Park West had information that justified its belief or at least did not have information that was incompatible with its statement.

[8] Defendants have apparently abandoned their argument that plaintiff's conspiracy claim should be dismissed because South Carolina law requires allegations of "special damages."

For all of the foregoing reasons, the Court GRANTS Park West's motion to dismiss the First Amended Complaint submitted by Mr. Mullen. Because plaintiff has not sought to invalidate the invoices that govern the parties' relationship, his claims are barred under the contractual limitations provision, his alleged reliance on representations made prior to contracting was unjustified, and his equitable unjust enrichment claim fails.

Dated this 25th day of June, 2010.

*MWT S Lasnik*
Robert S. Lasnik
United States District Judge